REBECCA ANN CRAVEN, *Appellant,* VS. A. H. HARTLEY, *Appellee.*
135 So. 899.
Division B.
Opinion filed June 30, 1931.
Petition for rehearing denied August 10, 1931.

WHITFIELD, P.J., AND DAVIS, J., concur.

BROWN, J., concurs in all the headnotes except Nos. 4, 5, and 7.

*James H. Bunch,* for Appellant.

*Paul C. Marion,* for Appellee.

TERRELL, J.—Appellant petitioned the Chancellor below to adjudicate certain lands in Duval County to be her homestead and exempt from forced sale for any claims against her as contemplated under Section One of Article Ten Constitution of Florida. Her petition was denied and this appeal taken from that order.

By the record in another suit between the parties hereto it appears that Appellant made a contract with a third party to purchase the lands involved in this suit for a consideration of eighteen hundred and seventy-five dollars, that fifteen hundred dollars was paid on the contract, that the payments were in arrears, that there was due on principal and interest the sum of six hundred twenty-five dollars, and that Appellant borrowed of Appellee the last named amount, made the final payment on said land and secured her deed therefor. It also appears that when

making this borrow Appellant promised to execute to Appellee a mortgage on said lands as security as soon as she secured her deed, that she declined to execute the said mortgage according to promise, so Appellee brought this suit in chancery to charge and sell the said lands as Appellant's separate property for the purchase price thereof under Section Two of Article Eleven of the Constitution of Florida relating to married woman's separate property. The evidence was in sharp conflict as to whether or not the mortgage was promised but the Chancellor concluded that it was and entered a final decree impressing an equitable lien on and ordering a sale of said lands to satisfy the claim of Appellee for the sum loaned Appellant and for other amounts not material here. On appeal to this Court that final decree was affirmed. Craven vs. Hartley, 95 Fla. 704, 116 So. 841.

At the time of the transaction as thus described Appellant was a feme covert but prior to the decision of this Court in Craven vs. Hartley, supra, (April 13, 1928) she had lost her husband through death and in consequence thereof had become a feme sole and the head of a family. The instant case was brought to set aside and exempt her homestead in and to the lands so purchased under the Constitution of Florida.

It is agreed by both parties that the sole question presented here is whether or not under the facts stated the loan of six hundred twenty-five dollars can be held to be an obligation ''contracted for the purchase of said property'' within the terms of Section Two of Article Eleven of the Constitution relating to married women's property. If this question is answered in the affirmative, then it follows that there is no basis for the homestead claim as contended for.

Article Eleven of the Constitution provides that all property, real and personal, of the wife owned by her before her marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or purchase shall be her

separate property and not liable for her husband's debts without her consent given in writing. A married woman's separate property may be charged in equity and sold, or the uses, rents, and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent.

In Micon vs. McDonald, 55 Fla. 776, 46 So. 291, this Court held that Article Eleven of the Constitution had the effect of removing from married women the common law disability of coverture in the cases therein enumerated, and enables her in such cases to assume obligations that can be enforced out of separate property. Nadel vs. Weber Bros. Shoe Co., 70 Fla. 218, 70 So. 20.

We think that under the facts stated the lands involved in this litigation were in the contemplation of Article Eleven of the Constitution the separate property of the Appellant lawfully acquired by her by purchase after marriage and that when she borrowed the six hundred twenty-five dollars from Appellee and made the final payment thereon the said loan to all intents and purposes became the price of property purchased by her and that said lands immediately became charged in equity for the payment of said loan.

When Appellant declined to execute the mortgage according to her promise Appellee was within his rights in seeking to have an equitable lien impressed on said lands under the doctrine announced by this Court in Jones vs. Carpenter, 90 Fla. 407, 106 So. 127. This holding is in harmony with spirit and terms of Section One of Article Ten of the Constitution relating to homestead exemp-

tions as it is there provided that no property shall be exempt from any contract for the purchase price thereof. Nor can the homestead exemption supersede prior judgments or liens. Pasco vs. Hendry, 73 Fla. 819, 75 So. 30.

The fact that the contract or promise to execute the mortgage was in parol was immaterial. The declaration in Article Eleven removing the disability of coverture and providing that the married woman's separate property may be sequestrated and sold for the price of any property purchased by her does not require that such sales be predicated on written contracts. When Appellee loaned Appellant the money and she applied it on the purchase price of the land and took title in her name the equitable lien of Appellee at once attached, it having been shown that Appellee relied on the promise of Appellant and the land as security. If other security had been relied on by him a different question would be presented.

In Foster Lumber Co. vs. Harlan County Bank, 71 Kan. 158, 80 Pac. 49, it was held that if a lender advance money for the purpose of buying a specific tract of land, upon the oral promise of the borrower to secure repayment by a mortgage upon the property when the title thereto is obtained, and, after the conveyance has been procured by the use of the money, the borrower refuse to execute the mortgage, equity will regard that as done which the borrower agreed should be done, and which ought to have been done, and will treat the transaction as creating an equitable mortgage upon the land in favor of the lender.

The doctrine of equitable liens does not depend on written instruments but may arise from a variety of transactions to which equity will attach that character. The fact that they may be predicated on a parol agreement is not obnoxious to the statute of frauds because they arise by operation of law from the conduct of the parties. Jones vs. Carpenter, supra, Foster Lumber Co. vs. Harlan County Bank, supra.

We therefore conclude that the loan of six hundred twenty-five dollars was an obligation contracted for the purchase of separate property of Appellant and that said property is bound for the payment thereof. It follows that it cannot be held as her homestead. This holding accords with our holding in Craven vs. Hartley, supra.

Affirmed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BROWN, J., concurs specially.

BUFORD, C.J., AND ELLIS, J., dissent.

BROWN, J. (Concurring) : Were the question an open one, I would have serious doubts that an equitable lien was created in favor of Hartley against Mrs. Craven's property when the loan of $625.00 was made to her. But I take it that question was settled by the decree which was affirmed by this court, and reported in 95 Fla. 704, 116 So. 841. While I am inclined to the view that, as section 2 of Article 11 gives the right to charge specific property for the payment of certain classes of obligations, it thereby creates an inchoate equitable lien which may be charged on the property by a court of equity, I doubt if this transaction falls within the class of obligations provided for in the cited section of the constitution. However, that an equitable lien was created by that transaction has become settled in this case by our former decision. The decree declaring that such transaction created an equitable lien, related back to the transaction out of which the equitable lien so declared arose. Thus the property was charged with this lien, in legal contemplation, at the time it acquired its homestead status, and when it became a homestead it was already subject to the lien, and the change to homestead status could not displace it. Section 1 of Article X of the constitution, exempting the homestead from forced sale under process of any court, says: "But no property shall be exempt from sale * * * for the payment of obligations contracted

for the purchase of said property, or for the erection or repair of improvements on the real estate exempted," etc. The item of $49.62 comes within the latter exception. Does the item of $625.00 with interest therein come within the exception relating to "obligations contracted for the purchase of said property"? The decree which has been heretofore affirmed said that Hartley had an equitable lien for this amount as "for money loaned by said complainant to said defendant to be used and applied on purchase price of said land and which was so used and applied by said defendant." The decree impliedly holds that Hartley thereby became subrogated to the right of the vendor to a lien to secure this balance due on the purchase price of the property. I am inclined to the view, therefore, in harmony with that of MR. JUSTICE TERRELL on this point, that the effect of the chancellor's decree was to declare that the transaction between Hartley and Mrs. Craven was to give Hartley an equitable lien "for the payment of an obligation contracted for the purchase of said property," thus bringing it within one of the exceptions from exemption provided in the constitutional homestead provision referred to. If Hartley was not equitably subrogated to the right of the vendor to enforce a lien for this amount, I cannot understand the force and effect of the chancellor's decree giving him an equitable lien for such amount. See Jones v. Carpenter, 90 Fla. 407, 106 So. 127.

I therefore concur in the conclusion reached by MR. JUSTICE TERRELL that the order appealed from should be affirmed.

ELLIS, J., (Dissenting) :—By reference to the record in the case of Craven v. Hartley, 95 Fla. 704, 116 South. Rep. 841, it appears that Rebecca Craven and her husband were living together with five sons and their daughter Mrs. Orr and her two children Hobert and Horace, aged thirteen and nine years respectively. The mother and

two children were dependent upon the former's parents Mr. and Mrs. Craven.

On January 18, 1918, Mrs. Craven purchased from the Skinner Brothers Realty Company the land involved in this suit which is located in Duval County not within the limits of an incorporated city and contains less than one hundred and sixty acres in a contiguous body. The number of acres which Mrs. Craven agreed to purchase was one hundred and fifty and the price agreed on was $3,750. She paid $1500. in cash and later paid $625. and obtained a deed to seventy-five acres of the original tract. There were no improvements of any kind on the place. During the year 1918 Mrs. Craven fenced the seventy-five acres. At that time she was living on the St. Augustine road at another and different place with her husband and five sons.

A. H. Hartley began boarding there, as he testified, without charge or any agreement as to the amount he should pay for board and lodging. Soon after fencing the place Mrs. Craven began building a house. There was a balance due of $625. to the Skinner Realty Company on the purchase price of the land. Hartley drew his check for $550. in favor of Mrs. Craven and supplemented that amount with seventy-five dollars in cash, so he said. Mrs. Craven took the check and seventy-five dollars to the Skinner Realty Company and made the last payment on the land and secured in her own name a deed to the place dated October 9, 1920. Later during the year 1921 or the early part of 1922, Hartley purchased some lumber which was used in the construction of the house. The bill amounted to $49.92.

In August, 1921, Hartley exhibited his bill of complaint in the Circuit Court for Duval County against Mrs. Craven and her husband and prayed that a lien be declared in his favor to the amount of the money advanced and that the property be sold to satisfy the demand. The Chancellor entered a decree in Hartley's favor on Sep-

tember 1, 1927, for the full amount of $674.92 and interest, granting the relief prayed.

There was much conflict in the evidence as to the true character of the transaction and whether at the time Mrs. Craven obtained the check from Hartley for $550. she agreed to execute a mortgage in his favor to secure that sum. There was also much conflict as to whether Hartley advanced $75. in cash and whether at Mrs. Craven's request he purchased lumber to be used in the construction of the house.

As to the alleged promise of Mrs. Craven to give a mortgage to Hartley on the place to secure the payment of the alleged advance to Mrs. Craven, one of Hartley's witnesses, Dr. Frank E. Patten, testified as follows, referring to Mrs. Craven and Mr. Hartley coming to his office:

"They came in to get me to draw a paper. It seemed that Mrs. Craven was about to borrow or had borrowed some money from Mr. Hartley, and Mr. Hartley wanted some paper as security for this loan, and to the best of my recollection Mrs. Craven thought that a note would be sufficient, an ordinary note. I objected to this, stating to Mr. Hartley and Mrs. Craven that a note would not be sufficient security in case one or the other should die, and advised them to have a mortgage and a mortgage note.

"Q. You explained to them that an open note would not be a lien on the property? A. I did; that was the point that I made at that time, that a note would not be sufficient security for Mr. Hartley for a loan of that size."

This conversation occurred after Mrs. Craven had paid the money to the Realty Company and obtained her deed.

An appeal by Mrs. Craven was taken from the decree which was affirmed by this Court. See Craven v. Hartley, *supra*. A cash deposit was made by Mrs. Craven on taking an appeal which under order of the court operated as a supersedeas bond. While the suit was pending in

the Circuit Court T. T. Craven, the husband of Mrs. Craven, died and the cause proceeded, against Mrs. Craven to a final decree.

I am of the opinion that no equitable lien existed in the case upon the separate property of Mrs. Craven and before the final decree was entered she became the head of the family and was entitled to the benefits of the homestead exemptions as to the land in any event, which was exempt from forced sale under process of any court. See DeCottes vs. Clarkson, 43 Fla. 1, 29 South. Rep. 442; Hill v. First Nat. Bank, 73 Fla. 1092, 75 South. Rep. 614; Caro v. Caro, 45 Fla. 203, 34 South. Rep. 309.

However just the demand of Hartley may have been the policy of the law is to preserve the home for the family even at the sacrifice of just demands. Hill v. First Nat. Bank, *supra*.

The decree was not a lien upon the homestead property of Mrs. Craven. Milton v. Milton, 63 Fla. 533, 58 South. Rep. 718.

The provision of the constitution applies not only to formal and technical process but to any judicial proceedings in law or in equity which seek the appropriation of the property to the payment of debts. West Florida Growers Co. v. Teutonia Fire Ins. Co., 74 Fla. 220, 77 South. Rep. 209.

No elements of an equitable lien existed in favor of Hartley. In the first place, Mrs. Craven was a married woman; secondly, the money was loaned to her, if at all, upon her individual credit; thirdly, the property was her separate property; fourthly, her promise to give a mortgage upon the land, if indeed it was made when the money was loaned, was ineffectual without her husband's consent; fifthly, it was not a contract for the purchase of land nor a debt due for the purchase price of it. It was simply money borrowed which she used to pay the balance due on her purchase of the land. The transaction did not come within any of the conditions named in

Section 2 of Article XI of the Constitution under which a married woman's separate real property may be charged in equity. Therefore the decree set up another condition not mentioned in the Constitution under which a married woman's property may be subjected in equity to the payment of a debt incurred by her and that on evidence not entirely clear at least so far as the alleged loan of $625. was concerned.

When the decree was affirmed by this court Hartley sought to enforce it and in June, 1928, Mrs. Craven lodged her petition in the Circuit Court entitled in the same case praying that the court would make an order declaring the lands to be her homestead and exempt from the lien of the final decree and that a temporary restraining order be issued restraining the sale of the land and for general relief. The petition was denied and Mrs. Craven took an appeal to this court from the order denying the petition.

I am of the opinion that the petition was merely a step in the original cause. If the property had been sold under the decree and the purchaser had applied for a writ of assistance the petitioner's resistance of it could rest upon her claim of exemption when no intervening equities had occurred because that claim would be under a right which was not adjudicated in the original proceedings. Bunch v. High Springs Bank, 76 Fla. 546, 80 South. Rep 319.

The majority opinion rests upon the doctrine that where one advances money to another for the purchase of land relying upon the other's promise to pledge the land to be acquired as security for the loan an equitable lien arises in favor of the lender upon the land acquired against the borrower. But as a married woman cannot by her act solely pledge the land acquired by her as security for the loan, her husband's consent being necessary to such pledge by way of a mortgage, a lender cannot legally be said to rely upon the promise. He knows

that in law the promise cannot be redeemed and the mortgage executed unless the husband consents and there was no assurance of promise that he would emanating from him.

Thus by the use of the doctrine of equitable liens the opinion provides a way for the subjection of a married woman's separate real property in equity to the payment of a debt incurred by her, for which no provision is made in the statute law of the state or the express words of the Constitution.

I think the order should be reversed.

BUFORD, C.J., dissenting: In this case I find myself unable to concur in the opinion prepared by Mr. Justice Terrell; nor am I able to concur in the dissenting opinion prepared by Mr. Justice Ellis.

The question of whether or not an equitable lien on the property involved here existed in favor of Hartley against Mrs. Craven was definitely and finally determined by a Per Curiam Order of Affirmance of this Court in the case of Craven vs. Hartley, 95 Fla. 704, 116 Sou. 841.

The decree there under consideration was in a suit brought by Hartley to establish an equitable lien in his favor against Rebecca Ann Craven upon the identical property now claimed as the homestead. The decree there affirmed was in part as follows:

"And it further appearing to the Court and the Court finding from the said report of the Special Master that said defendant, Rebecca Ann Craven is indebted to the complainant in the sum of Six Hundred Twenty-five ($625.00) Dollars, together with interest thereon at the rate of six per centum per annum from the 9th day of October, A. D. 1920, for money loaned by said complainant to said defendant to be used and applied on purchase price of said land and which was so used and applied by said defendant and that said complainant is .entitled to an equitable lien on said land to secure payment of said sum of money and the interest thereon; and it further appearing to the court and the court finding from said report of the said Special Master that said

defendant, Rebecca Ann Craven, is further indebted to said complainant in the sum of Forty Nine Dollars and Ninety Two cents ($49.92) together with interest thereon at the rate of eight per cent per annum from the 1st day of June, A. D. 1922, for lumber furnished by said complainant to construct improvements on the premises described in said bill of complaint, and so used by said defendant and that said complainant is entitled to an equitable lien on the lands described in said bill of complaint to secure the payment of said sum and the interest thereon.

And it further appearing to the Court and the Court further finding from the suggestion of death filed herein by the complainant, that the defendant T. T. Craven died subsequent to the time of taking testimony in this cause and that the defendant Rebecca Ann Craven is now a widow and further that said defendant T. T. Craven had no interest in the subject matter of this suit except as the husband of the defendant, Rebecca Ann Craven.''

Then follows the adjudication and decree that the cause proceed against Rebecca Ann Craven and requiring her to pay to Hartley within three days $625.00 with interest thereon at 6% from the 9th day of October, 1920, until date of payment, and the further sum of $49.92 with interest thereon from June 1st, 1922, until date of payment. The decree then decrees that in default of payment the lands therein described shall be sold to satisfy the decree, and other matters not necessary to be considered here. The decree establishes no binding contract between the parties pledging the property to secure the debt.

The appeal is from Order of Court dated July 28th, 1928, denying the petition of Rebecca Ann Craven in which petition set up sufficient facts to show that the lands were exempt from forced sale under the homestead provisions of the Constitution and in which it was prayed that an order be made exempting the lands from sale under the terms of a former decree of the Court which was rendered in the cause without adjudication of petitioner's homestead rights in the premises.

Insofar as the existence of equitable liens upon the property as adjudicated in the decree against the property there is now and here no question. That decree became the law of the case as between the parties as to all matters there adjudicated.

In Fidelity Deposit Co. of Maryland vs. Aultman, 61 Fla. 197, 55 Sou. 273, it was held:

"All the points adjudicated by an appellate court upon a writ of error or an appeal become the law of the case, and are no longer open for discussion or consideration, McKinnon vs. Johnson, 57 Fla. 120, 48 South. Rep. 910, wherein prior decisions of this Court will be found cited, and Purvis vs. Frink, 61 Fla. 712, 54 South. Rep. 62."

See also Hillsborough Grocery Co. v. Lehman, 62 Fla. 208, 56 Sou. 684; Commercial Bank vs. First National Bank of Gainesville, 80 Fla. 685, 87 Sou. 315.

So it is that the only question presented here for adjudication is whether or not the liens established by the former decree are such liens as may be enforced against the homestead property. The record shows that T. T. Craven, the husband of Rebecca Ann Craven, died on August 24th, 1923, after the institution of the original suit and prior to the final decree. Prior to the date of the entry of the final decree Rebecca Ann Craven had become the head of a family entitled to the benefits of the homestead exemption under the Constitution and she, with her dependent family, was at the time of the entry of the decree residing upon the lands sought now to be subjected to the lien established by that decree. It will be observed that the decree filed September 1st, 1927, adjudicates "That Rebecca Ann Craven is indebted to the complainant (meaning Hartley) in the sum of Six Hundred and Twenty-five ($625.00) Dollars together with interest thereon at the rate of six per centum per annum from the 9th day of October, A. D. 1920, for money loaned by the said complainant to the said defendant to be used and ap-

plied on the purchase price of the said land, and which was so used and applied''. This is not equivalent to a decree that Mrs. Craven was indebted to Hartley in the sum of $625.00 as a part of the purchase price of the land within the purview of Sec. 1, Art. X of the Constitution.

In Wilhelm vs. Locklar, et al., 46 Fla. 575, 35 Sou. 6, this Court, construing the exception in the Constitution rendering a homestead liable for an obligation contracted for the purchase of such property, held:

"A strict construction must, therefore, be given to this exception as we do not feel disposed to extend the terms 'obligations contracted for the purchase of the property' to one who lends money to the vendee, even though the latter uses it in paying a third party who came within the exception, especially when the lender does not rely on the property for security, but takes a simple note therefor and looks to the endorser on such note for payment. We freely admit that courts of the highest respectability hold a different doctrine, though we find none in which the facts are on all fours with this case, yet there are many that hold to the construction of similar constitutional provisions, which we place upon ours, and there is ample justification in following our own decision. Brodie vs. Batchelor, 75 N. C. 51; Calmes v. McCracken, 8 Rich. (S. C.) 87; Gray v. Baird, 4 Lea 212; Loftis v. Loftis, 94 Tenn. 232, 28 S. W. Rep. 1091; Nottes Appeal, 45 Pa. St. 361; Lear v. Heffner, 28 La. Ann. 829."

It will also be observed that the decree does not adjudicate that the $625.00 was for the purchase money of the property or for money or thing of value due upon any agreement made by the owner, a married woman, in writing for the benefit of her separate property, or for the price of any property purchased by her or for labor and material used with her knowledge or assent in the construction of buildings or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon with her knowledge and consent so as to charge the married woman's separate property in equity with the amount thereof under

the provisions of Section 2, Art. XI of the Constitution.

In Milton vs. Milton, 63 Fla. 533, 58 Sou. 718, it was held:

"Judgments or decrees are liens upon real estate of the defendant in the county where such judgments or decrees are rendered or recorded as required by the statutes. But under section 1, of Article X of the Constitution, no judgment or decree or execution shall be a lien upon homestead exempted property, except for taxes or assessments, or for the purchase price thereof, or for improvements on the exempt real estate, or for house, field, or other labor performed on the exempt property."

And so it is, that insofar as the original decree authorizes the sale of the property to satisfy the indebtedness established by such decree in the sum of $625.00 with interest thereon, it is ineffectual as against the homestead.

The original decree so adjudicates the status of the item of $49.92 and the lien created in connection therewith as to bring it within the exceptions contained in section 1, Article X of the Constitution and, therefore, a lien exists against the property in the sum of $49.92 which may be enforced as against the homestead.

This case is unlike the case of Pasco vs. Harley, 73 Fla. 819, 75 Sou. 30, in that in the Pasco case the judgment had been obtained and the lien attached prior to the time that Harley became entitled to the benefits of homestead exemption by marrying and becoming the head of a family, and for that reason the property claimed to be exempt to him under the homestead provisions of the Constitution was held to be subject to the lien of the judgment obtained before the property acquired the status of homestead property.

In this case there was no basis for the lien prior to the decree on September 1st, 1927. Section 2, Article XI of the Constitution creates no lien upon a married woman's separate property. Smith vs. Gauby, 43 Fla. 142, 30 Sou.

683. It only provides that such property may be charged in equity and sold under certain conditions to satisfy an existing indebtedness. A decree under this provision of the Constitution has the force and effect of a judgment, but it is required that the lien thereof attach to the property specifically charged therewith in the decree.

At and before the time the lands here sought to be exempted were charged in equity by the terms of the final decree with the payment of the sum of $625.00, such lands had become the homesteal property of the petitioner and were no more subject to sale under this decree than they would have been under a judgment at law rendered at a like period with like conditions existing.

For the reasons stated, the Order should be reversed and the cause remanded, with directions that the chancellor conduct such further proceedings herein as may be in accordance with law and the rules of practice and not inconsistent with the views herein expressed.