**UNITED STATES of America,**
**Plaintiff,**

v.

**Tony PAGANO, d/b/a M. Pagano and**
**Son, Defendant.**

**Civ. No. 19197.**

United States District Court
E. D. New York.

Nov. 18, 1960.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., for plaintiff; William A. Dubrowski, Asst. U. S. Atty., New York City, of counsel.

Leonard Robbins, New York City, for defendant.

ZAVATT, District Judge.

This is an action for conversion brought by the Government which claims to be the holder of a valid mortgage upon a crop of watermelons which the defendant purchased from the alleged mortgagor of that crop. The defendant has

moved for summary judgment. The facts are not in dispute. The sole issue is one of law, to wit, whether or not the Government holds a valid mortgage.

Lessie Wilkerson is a duly appointed guardian of the person and property of her incompetent husband, Lonnie. She was so appointed on September 10, 1953 by the County Judge's Court of Gilchrist County, Florida, and her letters of guardianship are still in full force and effect. The ward's principal asset is a farm located in Gilchrist County on which the family lives.

On February 9, 1954, Lessie borrowed $3,550 from the United States through the Farmers Home Administration and executed as security a "crop and chattel mortgage." The mortgage was executed and delivered by Lessie Wilkerson and one Clark Wilkerson (presumably a son of Lessie and Lonnie) as "mortgagor." The mortgage covers "all crops, planted, growing, or to be hereafter grown or raised" on real property described in the mortgage and also designated therein as the "Lonnie Wilkerson farm." The mortgage also covers livestock and farm equipment specifically described and stated to be located on the farm. Lessie and Clark covenanted in the mortgage that they were "the absolute and exclusive owner of the [mortgaged] property" and that they were "rightfully in possession of the [mortgaged] property at the location stated," i. e. at the Lonnie Wilkerson farm. They also covenanted that they would not sell any of the mortgaged property "without the written consent of the Mortgagee." For the purposes of this motion all parties concede that the real property, known as the Lonnie Wilkerson farm, and the crop and chattels so mortgaged, are owned by the incompetent and not by the "mortgagor" and that Lessie, as guardian, had received no authority from the County Judge's Court of Gilchrist County to borrow money in behalf of her ward or to mortgage any assets of her ward. The mortgage itself reveals on its face that Lessie executed the mortgage individually and not as guardian. No explanation has been offered as to why the son Clark joined in the execution of the mortgage. This mortgage was recorded in the office of the Clerk of the Circuit Court, County of Gilchrist, Florida, on February 9, 1954 in 7 Chattel Mortgages at page 186. On May 20, 1954, and on September 22, 1954, the same mortgagors executed and delivered similar crop and chattel mortgages to secure the same indebtedness. These mortgages listed additional livestock and were similarly recorded on May 20 and September 22, 1954 in 7 Chattel Mortgages, page 208 and page 214, respectively.

On June 20, 1955 Lessie sold the crop of watermelons then on the farm for the sum of $5,000 to the defendant who took possession of this crop and paid Lessie the full price. This sale was made without the authority of the County Judge's Court and without the consent of the mortgagee.

Between the date of the first mortgage (February 9, 1954) and the date of the sale of watermelons to the defendant (June 20, 1955) two events occurred. Some time in June 1954, Lessie sold a crop of watermelons for $1,270. The identity of the purchaser is not revealed in any of the papers before the Court. Lessie used $250 of the proceeds of this sale to make a payment on account of the mortgage indebtedness to the plaintiff. This payment is reflected in the crop and chattel mortgage dated September 22, 1954, referred to above, which recites that the original indebtedness of $3,550 has been reduced to $3,300. This sale was made without the authority of the County Judge's Court and without the consent of the mortgagee. Apparently, the Farmers Home Administration soon learned of this sale and County Judge E. M. Akins learned of the loan and the sale of the watermelon crop. In light of subsequent events, one may draw the inference that Judge Akins "suggested" at this time that Lessie file her "annual return," which under Florida law, a guardian is required to file by April 1 of every year. Fla.Stat. § 745.-24, F.S.A. On or about September 24,

1954, the guardian filed an annual return in the County Judge's Court, dated September 22, 1954, covering the period commencing September 10, 1953 (the date letters of guardianship were issued) and ending September 22, 1954. The return reported the loan of $3,550 as follows: "Borrowed from Farm Home Administration to carry on farming (crop loan) unpaid * * * $3,550." Further on the return shows the "payment to Treasurer of United States on Farm Home Administration crop loan * * * $250." The annual return "and the receipts and disbursements therein shown" were approved and allowed by the order of County Judge Akins, dated September 24, 1954.

On November 14, 1958, the Government instituted this action as the owner and holder of the three crop and chattel mortgages, claiming that the mortgagor had no "right or authority" to sell and that the defendant by "refusing to * * * return the said mortgaged property had converted the said property to his own use." The complaint alleges that the unpaid balance due on the mortgages, as of May 26, 1958, is $1,718.18 plus interest to that date of $178.98, with interest thereafter at the rate of five per cent per annum. The complaint prays that the defendant either return the watermelons or pay to the Government the amount due on the mortgages, with interest. The defendant by his answer denies that the Government holds a valid mortgage on any of the crops on the farm and has moved for summary judgment.

The sole issue on this motion is the validity of the mortgages. It is agreed that the law of the State of Florida will determine this issue. The thrust of the Government's main argument is that although under the recently enacted Florida Guardianship Law, F.S.A. §§ 744.01 et seq., 745.01 et seq., 746.01 et seq., a guardian has no power to mortgage the assets of her ward without the approval or confirmation of the County Judge's Court, the order of that court dated September 24, 1954, approving the guardian's annual return, is a "confirmation" of the previously executed and delivered mortgage within the meaning of the apposite law.

Section 745.04 of the Florida statutes, F.S.A. provides that the procedure whereby a guardian applies for an order authorizing him to borrow money and secure it by a mortgage upon the property of a ward (including crops then planted and growing and thereafter to be planted and grown) shall be as nearly as possible the same as in cases for applications for the sale of the ward's property.[1] It also provides that such a

---

1. "745.04 Encumbering property of ward
    "(1) Whenever it appears expedient or necessary and for the best interest of the ward to borrow money upon a promissory note or notes, either unsecured or to be secured by a mortgage, pledge or other lien upon the property of the ward or any part thereof, including crops then planted and growing or thereafter to be planted and grown, the county judge may by order authorize the guardian of the property to borrow such sum as the county judge deems proper. The proceedings in such cases shall be, as nearly as possible, the same as in cases of applications for the sale of the ward's property. In like manner the county judge may authorize the guardian to extend or renew any existing obligation of the ward, or any mortgage, pledge, lien or other security therefor. The signing of promissory notes or the execution of any agreement or other instrument creating a pledge or lien by the guardian as such, pursuant to an order obtained in accordance with the provisions of this section, shall create no personal liability against the guardian so signing or executing.
    "(2) To secure the payment of any loan made for the benefit of the ward, the guardian may execute a mortgage or other lien on the property of the ward or any part thereof, and the same shall be valid when authorized or confirmed by the county judge. The indebtedness so secured shall be the obligation of the estate of the ward.
    "(3) If, as an incident to the borrowing of money, the purchase of stock in the lending agency is required, the county judge may authorize such purchase in whatever amount he deems necessary.

mortgage shall be valid "when authorized or confirmed by the county judge." Sections 745.05 through 745.09 set forth the procedure whereby a guardian may obtain an order of the County Judge to sell property of the ward or to obtain an order for the confirmation of a sale previously made without an order.[2] A proceeding for leave to mortgage must begin with a petition of the guardian to the County Judge "setting forth with particularity in facts" the expediency or necessity for such a mortgage, a description of the property to be mortgaged and the amount and terms of the mortgage. Applications for leave to mortgage or for confirmation of a mortgage previously made may be heard by the County Judge ex parte. If the property is perishable or rapidly deteriorating the petitioner is not required to give notice of his application to anyone and the judge may hear the application ex parte. As to all other property the judge is vested with a discretion to determine whether or not notice of the application

2. "745.05 Sale.—When the guardian of the property deems it expedient, necessary or for the best interest of the ward for part or all of the property to be sold, he may sell at public or private sale, but no title shall pass until the sale is authorized or confirmed by order of the county judge; provided, however, that the guardian may sell without authorization or confirmation by the county judge any notes or bonds payable to bearer, and any sale so made shall convey all right, title and interest of the ward in the intangible personalty so sold; and provided, further, that inchoate right of dower of the ward shall be conveyed only as provided in § 745.15.

"745.06 Petition for leave to sell.—Application for authorization or confirmation shall be made by the petition of the guardian setting forth with particularity in facts showing the expediency or necessity for such sale, a description of the property sold or proposed to be sold, and except when authorization or confirmation of the sale at current market of stocks, bonds or other securities listed upon an established exchange is applied for, the price and terms of such sale. If the petition seeks authorization for the sale of property at public sale, it shall state the minimum price for which it is desired to sell the property and shall state that, if the sale takes place, it shall be sold to the highest bidder, if any, above such minimum price. Applications for sale may be heard by the county judge ex parte, except as provided in §§ 745.07 and 745.08. The petition must be sworn to by the guardian, his agent or his attorney.

"745.07 Notice of hearing on petition to sell.—No notice of any petition for the authorization or the confirmation of any sale of perishable personal property or of property rapidly deteriorating shall be required. No notice of any petition for the authorization or the confirmation of any sale of any kind of property shall be required unless the county judge deems it necessary or desirable, and then only such notice shall be given, personally or by publication, as the county judge may direct.

"745.08 Hearing.—When no notice is required, the county judge may hear and determine petitions for the sale of the ward's property ex parte. When notice is required, such hearing shall be as in other cases. At such hearing the county judge may in his discretion require a new appraisal of the property.

"745.09 Order of sale.—After the hearing upon a petition to sell property or to confirm the sale of property, the county judge shall make and enter an order thereon, and if the sale is authorized or confirmed, the order shall describe the property; and if the property is authorized to be sold at private sale, the order shall fix the price and the terms of sale. If the sale is to be public, then the order shall state the minimum price for which the property is to be sold and shall specify that the sale shall be made to the highest bidder above such price, if any. The order may also determine whether an additional bond is required, and if it is required, shall fix the amount thereof, but no such bond shall be required when the guardian is a bank or trust company. Such order shall be prima facie evidence of validity of the proceedings and of the authority of the guardian to make a conveyance or transfer of the property. A certified copy of such order relating to real property may be recorded in the judgment lien record in the office of the clerk of the circuit court in any county wherein such real property or any part thereof is situated. An order of sale may provide for the sale of any of the property described therein, either publicly or privately, in parcels. or as a whole."

shall be given and to whom and in what manner. If he decides that no notice need be given, he hears and determines the petition ex parte. If he decides and directs that notice shall be given, then the application must be heard "as in other cases." After the hearing (either to mortgage or to confirm a mortgage) the judge must make and enter an order. If he authorizes a mortgage, or confirms one previously made, the order must describe the property, the amount of the mortgage and its terms. The order may also determine whether an additional bond is required (where the guardian is not a bank or trust company) and, if required, shall fix the amount thereof. The order prescribes the terms of the mortgage and the guardian may mortgage only upon those terms. When an order to mortgage has been made the guardian becomes vested with the power to execute and deliver the mortgage "in his name as guardian," (§ 745.20) and the mortgagee is not bound or concerned to see that the money paid to the guardian was actually needed or properly applied. The acts of the guardian are prima facie valid. § 745.21. Even when all of the requirements of these provisions are complied with and such order is made by the County Judge, the order is only prima facie evidence of the validity of the proceedings and of the authority of the guardian to execute and deliver the mortgage upon the property of the ward.

The annual return of the guardian, dated September 22, 1954, does not report to the court the facts which the statutes above quoted require to be included in an application for an order confirming a mortgage previously made, nor was an order of confirmation made and entered as required by these statutes.

Neither party has cited to the court a Florida decision on point. The court's research lead to Stokes v. Home Owners Loan Corporation, 1939, 138 Fla. 209, 189 So. 657. There a husband was duly appointed guardian of his incompetent wife by the County Court. Desiring to mortgage his ward's property, the guardian applied to the Circuit Court for permission which he received in an order of that court. The mortgage was thereupon executed, delivered, and recorded. However at the time the application to the Circuit Court was made, that court, by statute, had lost jurisdiction over ward's estates. The application should have been made to the County Court. Former section 744.21 of the Florida Statutes, F.S.A. provided that "any encumbrance made by any guardian when not * * * authorized by [the County Judge] as herein provided, shall be of no effect." Thereafter, the mortgagee instituted an action to foreclose this mortgage on real estate owned by the husband and his ward. The validity of the mortgage was questioned by the mortgagors who had received the benefit of the mortgage loan. The Supreme Court of Florida held that the mortgage was invalid because the guardian had not complied with the Florida statutes. The case illustrates that the statutes in question must be complied with in order to validate mortgages made by guardians. The case of In re Anderson's Guardianship, Fla.1954, 75 So.2d 790 cited by the Government is not in point. There a guardian had used funds of his ward to improve the real property of the ward with the oral, but not the written, authority of the County Court. An accounting thereafter filed detailed the expenditures made by the guardian and was accompanied by a petition for an order approving those expenditures. Objections to the accounting and the petition were filed; a hearing was held by the County Judge who overruled the objections and approved the report insofar as these expenditures benefited the ward's estate. The Florida Supreme Court held that though it was improper for the guardian to have made the expenditures without a written order the error was harmless. Here there was involved only the propriety of expenditure of the funds of the ward for the benefit of the ward. No rights of intervening third parties were involved. Nor was validity of a mort-

gage and its compliance with the Florida statutes involved. It is a far cry from the holding in that case to a determination that the mortgage in the instant case was confirmed by the mere filing of an annual report of the guardian and the order of the County Judge approving it.

The Government would have this court read into the annual return and the order approving it facts not contained or recited in either the annual return or the order made thereon. The Government contends that the County Judge knew that the mortgage had been made and that by his order he confirmed it. It bases this argument upon its interpretation of the affidavit of the County Judge sworn to September 20, 1960 submitted by the Government in opposition to the defendant's motion.[3] Assuming that the County Judge knew all of the facts relating to the mortgage and even had the guardian listed the mortgage in her annual return (which she did not do) I hold that the approval of such an annual return would not satisfy the requirements of the statutes of Florida as to the method whereby a mortgage previously made by a guardian may be confirmed. I find that the mortgages held by the Government are not valid liens upon the crop of the watermelons sold to the defendant.[4]

The Government also argues that a guardian's common law right to mortgage personal property without court approval continues in full force even though the statute specifically requires court approval or confirmation. For this propo-

---

3. The affidavit of Judge Akins recites:

That he was the duly elected and qualified County Judge of Gilchrist County, Florida on January 22, 1954, and has held said office since said time and is now the duly elected and qualified Judge of the County Judge's Court of said County and State.

That affiant was informed through the filing of an annual accounting by Lessie Wilkerson (who was then and still is the duly appointed and qualified guardian of Lonnie Wilkerson, an incompetent, having been appointed by this affiant), that some time after January 22, 1954 and prior to September 24, 1954, it was necessary to obtain a loan in the amount of $3,500 to carry on the farming operations, including planting, growing and harvesting of crops and watermelons which is the main source of income from the farm of the incompetent and the principal cash crop in this area.

That the first time that this affiant knew of any such loan being made to the guardian was when some difficulty arose between Lessie Wilkerson and the Farmers Home Administration as to the disbursement of funds received from the sale of a certain watermelon crop grown on the property during the year of 1954, this being subsequent to July, 1954 and prior to September, 1954.

That in her annual accounting as guardian, the said Lessie Wilkerson included in the Guardian's Annual Return a receipt item which showed that she had had borrowed from the Farmers Home Administration for the purpose of carrying on the farming practices, the sum of $3,500, that the annual return was filed in the office of the County Judge of Gilchrist County, Florida on or about September 24, 1954, and that on September 24, 1954 the said annual return was approved by the said affiant as County Judge of Gilchrist County, Florida.

4. In this connection it is reassuring to read the "advisory opinion" of County Judge Akins submitted by the defendant in support of its motion. This opinion is contained in a letter by the Judge to local counsel retained by the defendant. In pertinent part the letter states:

It is my opinion:

1. That a guardian must apply to the Court by petition for authorization to encumber a ward's property, or must apply to the Court by petition for an order confirming an encumbrance of a ward's property. This means, that the Court must, by order, authorize or confirm the encumbrance of a ward's property.

2. That a chattel mortgage executed by a guardian in her individual capacity, or in her capacity as such guardian, is not validated by the mere listing of said chattel mortgage in a later annual return. It is still necessary for the guardian to have obtained an order authorizing or confirming the execution of the chattel mortgage. The law regarding annual returns sets forth that the county judge must audit a guardian's annual return and does not validate chattel mortgages listed therein, even though the annual return be approved by the county judge.

sition the Government relies on authorities which indicate that the common law rule in a particular jurisdiction is not abrogated by a "statute providing that the proper court may on application of a guardian order and decree any change to be made in the investments of the estate * * * or by a permissive statute authorizing a sale of the ward's personal property upon an order of court." 25 Am.Jur. § 123. But certainly the Florida Guardianship Law is not such a narrow statute. Rather it purports to regulate all aspects of the guardian-ward relationship. See Hughes v. Bunker, Fla. 1954, 76 So.2d 474, 476. In the face of its completeness there is little room for the workings of the pre-existing common law – – – except insofar as the common law is codified in the statute. Thus the statute declares its own rule of construction: "[T]he rule that statutes in derogation of the common law shall be strictly construed does not apply." Fla. Stat. § 744.04, F.S.A. This view is supported by the explanatory comments of County Judge Jack F. White, a member of the committee that drafted the new law, in which he describes the law as an integrated "code" and a new starting point for determining the rights and duties of guardians and wards. See Volume 21, Fla.Stat.Ann.

■ The Government finally contends that even if the mortgages be held invalid it is entitled to be deemed the owner and holder of an equitable mortgage; that it is entitled to such a lien because it loaned money on the anticipation of a mortgage and because the ward's estate received the benefit of the loan. Under such circumstances the courts of Florida would probably impose a lien on the property for the benefit of the lender. See Stokes v. Home Owners Loan Corporation, supra; Craven v. Hartley, 1931, 102 Fla. 282, 135 So. 899; Osborne, Mortgages 67–68 (1951). But such a lien does not avail the Government in this case because an equitable lien will not be enforced against one whose equity is greater than the one asserting it, and the defendant, a purchaser for value and without notice of the abortive mortgage conveyance, has an equity superior to the Government's. Cf. Fla.Stat. § 698.01, F.S.A.; accord, Love v. Sierra Nevada Lake Water & Mining Co., 1867, 32 Cal. 639.

The defendant's motion for summary judgment is granted. Settle an order consistent with this opinion on or before ten days of the date hereof.