KANNER, Acting Chief Judge.
Trial before the chancellor resulted in a decree ordering foreclosure against the defendants-appellants, Peter Pinkas and Vlasta Pinkas, his wife, and in favor of Eric L. Fiveash, plaintiff-appellee. Through this appeal defendants urge that the mortgage involved had been extinguished by merger or in the alternative that certain express provisions of the mortgage deed precluded entry of the decree.
*911 Eric Fiveash, a single man, acquired an undivided one-half interest in the lands here involved through a real estate transaction with Elizabeth Tod, a widow. Two years later he reconveyed his interest to Mrs. Tod, taking a mortgage in the principal amount of $10,000, which instrument was duly recorded. After acquiring the mortgage deed, which comprises the basis of the suit now before this court, Fiveash was married to Mrs. Tod, but they were later divorced. After the divorce Mrs. Tod conveyed the property by warranty deed to herself and her son, Gordon F. Penick, as joint tenants with full rights of survivorship and with no consideration apparent in that transfer. Fiveash knew nothing of this conveyance until execution by him of a subordination agreement the following year.
Later, Mrs. Tod advised Fiveash that she had to sell the property involved, but she refused to disclose the time and place of the closing or the identity of the purchaser. She attempted unsuccessfully to procure from Fiveash a satisfaction of the mortgage for considerably less than the full amount of $10,000. Soon thereafter, without Fiveash’s knowledge, the property was sold and transferred to the defendants for the purchase price of $55,000. Despite the fact that it had been properly recorded, the existence of the mortgage held by Fiveash was not discovered. All other liens were paid through a title company, with the remainder of the consideration going to the sellers, from which Mrs. Tod received $8,196.
Shortly after the closing Fiveash learned of the transaction and sought satisfaction of his mortgage, but payment was refused. This suit for foreclosure was thereupon instituted. Defendants had no witnesses at the foreclosure hearing, presented no testimony, and were not present except through representation by their counsel.
Under their first appeal point, the defendants advance the proposition that merger of the legal and equitable title of the mortgage resulted by virtue of the marriage of the mortgagor and mortgagee and so operated to extinguish the obligation and debt. They assert that Florida has adopted the common law when not in conflict with the constitution or statutes of the state, and even though the married women’s act is in effect, the common law rule as to an antenuptial obligation and its extinguishment after marriage has not been abrogated. Thus, they interpret the constitution and statutes as being compatible with the common law unity of the spouses theory.
Under the common law the husband and wife, upon their marriage become one person, and the entire legal existence of the woman becomes merged in that of the husband. This is foundationally the principle within which are rooted the common law rules relating to rights, duties, and disabilities of marriage. Omwake v. Omwake, Fla.1954, 70 So.2d 565; Annotation, 45 A.L.R.2d 722; and 26 Am.Jur., Husband and Wife, section 3, p. 632. So it is, under the common law unity theory, antenuptial contractual debts of the husband to the wife or the wife to the husband, not in contemplation of marriage, are generally extinguished by marriage and are not revived on discoverture. 26 Am. Jur., Husband and Wife, section 26, p. 653; and Annotation, 45 A.L.R.2d 722.
The enactment of married women’s lav/s in various jurisdictions has wrought changes as to this common law rule; in some, the extinguishment through merger theory is still adhered to, while in others, it either has been abrogated or modified. See Annotation, 45 A.L.R.2d 722-727.
In Florida, through the years, the common law relating to disabilities of married women has undergone drastic modification. Today, the wife’s right to her separate property is established by constitutional and statutory provisions. The common law unity of husband and wife insofar as it relates to the wife’s separate property, whether realty or personalty, has been abrogated. *912 Omwake v. Omwake, supra; State v. Herndon, 1946, 158 Fla. 115, 27 So.2d 833; and 17 Fla.Jur., Husband annd Wife, section 12, p. 70. The law now provides that all real and personal property owned by a wife before marriage or lawfully acquired subsequently by gift, devise, bequest, descent, or purchase is her separate property. Florida Constitution, Article XI, section 1, F.S.A.; section 708.02, Florida Statutes, F.S.A.; and Craven v. Hartley, 1931, 102 Fla. 282, 135 So. 899.
Section 2 of Article XI, moreover, provides that a court of equity may charge and sell a married woman’s separate real or personal property or may sequester the rents, uses, and profits from it “for the purchase money thereof” or “for the price of any property purchased by her”, or for the other enumerated instances. See Taylor v. Dorsey, 1944, 155 Fla. 305, 19 So.2d 876; and Craven v. Hartley, supra. Equity also has recognized the duality of husband and wife whenever their interests conflict and in such situation has traditionally permitted intramarital suits by the wife against her husband or the husband against the wife as if the wife were unmarried. Wilson v. Wilson, 1928, 96 Fla. 358, 118 So. 215.
Further, the married women’s act has also expanded the powers and rights of a married woman in Florida. To illustrate, she now is empowered, subject to the express limitations of the act, “ * * * to take charge of, and manage and control her separate property, to contract and to be contracted with, to sue and be sued, and to sell, convey, transfer, mortgage, use and pledge her property, real and personal, and to make, execute and deliver instruments and documents of every character, * * ” Section 708.08, Florida Statutes, F.S.A. Also, “Every married woman may enter into agreements and contracts with her husband, may become the partner of her husband or others, * * * ” Section 708.-09, Florida Statutes, F.S.A. These powers and rights exemplify the metamorphosis which the legal status and capacity of the married woman has undergone.
Mrs. Tod acquired Fiveash’s interest in the property upon giving him the mortgage for $10,000. At the time she married him, the mortgaged property was owned by her as her separate property. No occurrences during the period of marriage served to alter her title, so the ownership remained in her until discoverture and subsequent conveyance of the property. For this court to hold that cover-ture, per se, erased the debt which existed between Mrs. Tod and Fiveash before their marriage would be to cleave to the common law theory as to unity of the spouses. Such a holding would be inconsistent with the constitutional and statutory provisions relating to a wife’s separate property and her rights, powers, and authority in connection with it. When the choice is between the common law on the one hand and the constitution and the statutes on the other, the latter must prevail. We therefore conclude that there was no merger of the legal and equitable title of the mortgage through the marriage of the parties and that the obligation and debt remained alive.
Under the second appeal point the defendants urge that the terms of the mortgage deed preclude foreclosure by the plaintiff unless or until the mortgagee survives the mortgagor. The mortgage specifies the manner in which the mortgage indebtedness may be discharged.[1] It is asserted by *913 defendants that so long as there is a possibility the indebtedness may be discharged by the death of the mortgagee prior to the death of the mortgagor, plaintiff is not entitled to bring foreclosure proceedings. The chancellor, finding that the debt rep-sented by the mortgage instrument matured as of the date of the sale of the property, stated on the basis of the language in the instrument quoted in the first provision of the footnote that this is “ * * * the prevailing paragraph as to payment, and the other paragraphs in said mortgage would be considered as a method of payment only if there had not been a sale of the property prior to the death of one of the parties to the mortgage * * * ” We are in accord with the chancellor’s view that since the mortgagor sold the mortgaged premises and since the mortgagee is alive, the provisions of the first paragraph became operative upon the consummation of the sale and the remaining two paragraphs thereupon became nugatory.
As to the third and final appeal question, the defendants inquire whether the court in the final decree of foreclosure should award the full amount of the obligation or whether instead the amount should be limited to the balance of the net proceeds of the sale, which is a lesser amount. The language of the mortgage instrument calls for the payment of a stipulated sum. There is no provision in the mortgage, nor is anything shown in the evidence, to alter the amount of the obligation.
We are of the opinion that entry of the chancellor’s final decree of foreclosure was proper.
Affirmed.
SHANNON, J., and KELLY, CLIFTON M., Associate Judge, concur.

. “Provided Always, that if the said Mortgagor, her heirs or legal representatives, shall pay to the said Mortgagee the sum of Ten Thousand Dollars upon the sale of said mortgaged premises by the Mortgagor, her heirs or legal representatives, then the estate hereby created shall be void; otherwise the same shall remain in full force and efOect.
“Provided Further, that in the event of the death of the Mortgagor during the life of the Mortgagee, this obligation and the mortgage securing it shall become immediately due and payable, and the *913 mortgage may be foreclosed; and all costs and expenses of collection of said sum, with or without suit, including a reasonable fee for the Mortgagee’s attorney, shall be paid by the estate of the Mortgagor, and are hereby secured.
“Provided Further, that in the event of the death of the Mortgagee prior to the sale of said mortgaged premises by the Mortgagor or prior to the death of the Mortgagor, then and in either such event this debt and the mortgage securing it shall immediately terminate and be of no further force and effect.”