In the Matter of Michael Gerald
ALBRITTON, Debtor.

Connie ALBRITTON, Plaintiff,

v.

Michael Gerald ALBRITTON, Defendant.

Bankruptcy No. 80–1432.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Jan. 26, 1982.

Gerald R. Sage, Tampa, Fla., for plaintiff.

Shirley C. Arcuri, Straske, Farfante & Watkins, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an adversary proceeding and the matter in controversy is the dischargeability, vel non, of a debt allegedly owed to the Plaintiff, Connie Albritton, by the Debtor, Michael Gerald Albritton, and the right of the Plaintiff in certain real property which is now owned by the Debtor, who now seeks relief under Chapter 7 of the Bankruptcy Code.

The record as established at the final evidentiary hearing reveals the following:

The Debtor and the Plaintiff were married to each other on December 1, 1972. In August of 1976, the couple acquired title to the real property which is the subject matter of this controversy. Sometime prior to April of 1981, Connie Albritton, the Plaintiff filed a petition for dissolution of marriage. The final hearing in this matter was held on April 24, 1981, although no final decree was entered. As part of the dissolution of marriage proceeding, counsel for the Debtor drew up an agreement entitled "Settlement Agreement" (Pl's Exh. # 1). According to the Agreement, the Plaintiff agreed to convey her interest in the marital residence for the sum of $7,500 payable at the rate of $125 per month for five years. The Agreement did not contain a provision for the stipulation of the Plaintiff's interest in the event the property was sold by the Debtor who, as part of the Agreement, was to receive a quit claim deed to the property. The Agreement does not contain the provision that the obligation represented by the note was to be secured by the mortgage on the property.

Sometime prior to May the 12th, the Debtor contacted the Plaintiff and asked her to meet with the Debtor for the purpose of finalizing the Agreement concerning the marital home. The Plaintiff agreed and met the Debtor on May 12, 1980 in the office of her attorney, Mr. Gerald Sage, where the Plaintiff's sister, Wanda LoCicero is employed as a legal secretary. Mr. Sage was not in his office and, therefore, he did not have an opportunity to review these documents with his client. However, Ms. LoCicero, after a discussion with her sister, the Plaintiff herein, retyped the Settlement Agreement, which the Debtor's attorney had previously prepared, to include Paragraph 3 which provides for full payment of the unpaid balance on the note in the event the property was sold.

After the parties signed the Settlement Agreement and the Quit Claim Deed, the Debtor left Mr. Sage's office taking the original Settlement Agreement with him. The testimony of the witnesses at the trial is in dispute as to what the Debtor intended

to do with the original after he left Mr. Sage's office. Both the Plaintiff and Ms. LoCicero testified that the Debtor stated he was going to file it with the divorce court where it would be incorporated into the Final Judgment of Dissolution of Marriage. At this juncture, it is important to note that the Settlement Agreement is cast in the form of a property settlement agreement and part of the divorce. It is styled In re: The Marriage of Connie Albritton, Petitioner, and Michael Gerald Albritton, Respondent, Case No. 79–13502, Division "P". The top of the first page recites in capital letters: In the Circuit Court of the Thirteenth Judicial Circuit In and For Hillsborough County, State of Florida, Civil Division. The Debtor denied that the filing of the Settlement Agreement was ever discussed, but the record supports the inference that the Defendant left the Plaintiff with the impression that the Agreement would be part of the record and an enforceable provision in the final decree of dissolution of marriage. It is without dispute that neither the Settlement Agreement nor the Quit Claim Deed was filed with the Circuit Court. It is without dispute that the Debtor made the three payments pursuant to the Agreement for June, July and August of 1980. On September 23, 1980, the Debtor filed his voluntary petition in bankruptcy and stopped making any further payments.

█ The complaint, in Count I, alleges that the Debtor fraudulently induced the Plaintiff to sign the Settlement Agreement and the Quit Claim Deed by misrepresenting that the real property would stand as security for the payment of the $7,500 obligation, that he would file the Settlement Agreement with the circuit court, that the Plaintiff relied on these mispresentations and in the prayer for relief seeks to declare the debt to be non-dischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. This Section of the Code provides that:

"(a) A discharge under 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services .... by—

(A) false pretenses, a false representation, or actual fraud ..."

Under this Section, the burden of proof is on the Plaintiff to establish by clear and convincing evidence each element essential to the objection. Bankruptcy Rule 407, *In re Ashley*, 5 B.R. 262 (Bkrtcy., Tenn. 1980).

Section 523(a)(2)(A) does not differ substantially from the corresponding section of the pre-Code law, § 17(a)(2) of the Bankruptcy Act. As Collier notes, the frauds embraced by this Section involve "moral turpitude or intentional wrong." *Collier*, 15th. ed. ¶ 523.08. Indeed, a showing of implied fraud or conduct which only creates a suspicion of fraud is legally insufficient. *Sweet v. Ritter Finance Company*, 263 F.Supp. 540 (W.D. Va. 1967); *Friendly Finance Service Mid-City, Inc. v. Windham*, 240 So.2d 26 (1970). Considering the testimony of the parties and the evidence adduced at trial this Court is satisfied that the Plaintiff has failed to carry her burden of proof to establish the essential elements of a claim for relief under this Section, therefore, the relief prayed for in Count I must be denied.

█ Count II of the complaint seeks to impose a constructive trust on the real property. This claim is based on the contention that the Debtor has been unjustly enriched "by failing to comply with the terms and conditions of the Settlement Agreement." It is clear that the mere failure to perform an agreement or to carry out a promise or failure to pay a debt, cannot in itself give rise to a constructive trust. This is so because such a breach does not in itself constitute fraud or abuse of confidence or duty, all of which are requisite to the existence of a constructive trust. 33 Fla.Jur. § 64 (1960). *Yawn v. Blackwell*, 343 So.2d 906 (1977). Accordingly, the absence of proof of fraud is fatal to Plaintiff's claim set forth in Count II and the relief prayed for in this Court, i.e. imposition of a constructive trust cannot be granted.

█ In Count III, the Plaintiff seeks the impression of an equitable lien on the real property involved in this controversy. It is

clear that an award of an equitable lien based on unjust enrichment or general considerations of right and justice must be predicated on factors such as mistake or material representation. *Merritt v. Unkefer*, 207 So.2d 726, quashed 223 So.2d 723 (1969). After a review of the testimony and the circumstances surrounding this transaction, this Court is of the opinion that an equitable lien should be impressed upon the real property to the extent of the remaining balance due under the settlement agreement. This Court is satisfied that the Plaintiff executed the agreement and Quit Claim Deed under the mistaken belief that the Agreement would be filed of record and incorporated into the Final Judgment of Dissolution. Clearly, this was not an unwarranted belief considering the fact, mentioned earlier, that the Settlement Agreement on its face appeared to be a document prepared for filing in the Circuit Court.

A separate final judgment will be entered in accordance with the foregoing.