George W. LEDFORD Chapter 13
Trustee, Plaintiff,

v.

SOCIETY BANK, Defendant.

In the Matter of Thomas H. STUMP,
Jr. Cassandra D. Stump, Debtors.

Bankruptcy No. 3–84–01883.
Adv. No. 3–85–0004.

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 31, 1985.

George W. Ledford, Englewood, Ohio, trustee.

Charles B. Fox and Timothy Dempsey, Dayton, Ohio, for debtors.

David B. Pariser, Columbus, Ohio, for defendant.

DECISION AND ORDER DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

WILLIAM A. CLARK, Bankruptcy Judge.

On January 2, 1985 the Chapter 13 Trustee filed an adversary complaint, accompanied by certain exhibits, alleging that defendant, Society Bank, had received a preferential transfer from the debtors, Thomas and Cassandra Stump, pursuant to 11 U.S.C. § 547(b) of the Bankruptcy Code. Defendant, Society Bank, filed its answer on January 29, 1985 asserting that the transfer was excepted from the preference provisions of the Bankruptcy Code by either 11 U.S.C. § 547(c)(1) as a "contemporaneous exchange" or by 11 U.S.C. § 547(c)(3), which deals with "enabling loans." [1] On March 4, 1985 the Trustee,

---

1. Because of the holding in the instant proceed-        ing that the transactions between the debtors

pursuant to BANKR.R. 7056 and FED.R. CIV.P. 56, moved for a summary judgment on the grounds that the pleadings demonstrated no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law.

### FACTS

On the basis of the pleadings, the exhibits attached to the plaintiff's complaint and certain admissions made by the plaintiff at the hearing on the motion for summary judgment, the undisputed facts appear as follows:

On or about July 10, 1984 defendant, Society Bank, loaned $2,425.04 to the debtors, which was evidenced by a security agreement and promissory note signed by the debtors. The purpose of the loan was to enable the debtors to purchase a 1977 Oldsmobile Omega, which was described in the security agreement, and, in fact, these funds were used by the debtors to purchase the automobile. On August 15, 1984 (36 days after the loan was made) a certificate of title was issued in the names of the debtors and on the same day the lien of defendant, Society Bank, was noted on the certificate of title as the first lien.

and creditor fall within the "enabling loan" exception, the question of "contemporaneous exchange" is not reached.

**2.** 11 U.S.C. § 547(b) reads as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

(B) * * * * *

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is assumed, here, that the elements of a preference have been satisfied and that the

### CONCLUSIONS OF LAW

The issue is whether the transactions between the debtors and creditor fulfill the requirements of 11 U.S.C. § 547(c)(3), thereby preventing the Trustee from avoiding the transfer under 11 U.S.C. § 547(b) of the Bankruptcy Code.[2]

11 U.S.C. § 547(c)(3), which protects transfers by a debtor made as a result of "enabling loans," provides that a trustee may not avoid as a preference a transfer—

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is *perfected* before 10 days after such security interest *attaches;*[3] [emphasis supplied]

only inquiry is into whether an exception under 11 U.S.C. § 547(c) exists.

**3.** This case is controlled by the version of 11 U.S.C. § 547 that existed prior to the Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub.L. No. 98–353.

11 U.S.C. § 547(c)(3) "was designed to accommodate the purchase money security interest now provided for in Uniform Commercial Code § 9–107." However, there was an incongruity between the two provisions. "UCC § 9–301(2) gives the purchase money secured creditor a 10-day grace filing period computed from *when the debtor has possession of the collateral.* The Bankruptcy Code, however, computes the 10-day period from the date when the security interest 'attaches.'" Kaye, *Preferences Under the New Bankruptcy Code,* 54 AM.BANKR.L.J. 197, 205 (1980).

"The Bankruptcy Amendments and Federal Judgeship Act of 1984 conformed Section 547(c)(3)(B) to Section 9–301(d)(2) of the Uniform Commercial Code by changing 'before 10 days' to 'on or before 10 days,' and by changing 'after such security interest attaches' to 'after the debtor receives possession of such property.'"

From the undisputed facts it is clear that the four conditions of subparagraph (A) are satisfied. The only remaining question is whether the creditor's security interest was perfected before 10 days after the security interest *attached*. It can not be overemphasized that the clear statutory language refers to the period of time between *attachment* and *perfection,* not to the interval between the signing of the security agreement or the date that funds are loaned and *perfection.*

Ohio law provides that attachment of a security interest occurs after three events take place. OHIO REV.CODE § 1309.14 [U.C.C. § 9–203]:

(A) [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of collateral . . .;

(2) value has been given; and

(3) the debtor has rights in the collateral.

On July 10, 1984 the debtors signed a security agreement, which contained a description of the collateral, and Society Bank gave value in the amount of $2,425.04. But the security interest of Society Bank did not attach until the debtors acquired rights in the collateral. Under Ohio law the debtors did not have rights in the automobile until a certificate of title was issued in their names.

No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title, or manufacturer's or importer's certificate for the motor vehicle, for a valuable consideration. OHIO REV.CODE § 4505.04.

On August 15, 1984 a certificate of title was issued in the debtors' name, thereby giving the debtors rights in the collateral and completing the last event necessary for Society Bank's security interest to attach to the collateral.[4]

A security interest is perfected in a motor vehicle in Ohio, not by filing a financing statement, but by a notation of the creditor's lien on the certificate of title. OHIO REV.CODE § 1309.21 [U.C.C. § 9–302]; OHIO REV.CODE § 4505.13. The security interest of Society Bank was noted on the debtors' certificate of title on August 15, 1984. Thus attachment and perfection occurred on the same day, fulfilling the requirement of 11 U.S.C. § 547(c)(3)(B) that a security interest be perfected before 10 days after it attaches.

\* \* \* \* \* \*

Most of the cases cited by the Trustee in support of his position are distinguishable from the case at bar.

*In re Arnett,* 731 F.2d 358 (6th Cir.1984), did not involve an "enabling loan," but rather was decided on the basis of whether

COLLIER ON BANKRUPTCY ¶ 547.39 n. 4 (15th ed. 1985).
In the instant matter the date that the debtors acquired possession of their motor vehicle is not stated in the facts and this court deems it unimportant under § 547(c)(3) as it existed prior to October 8, 1984, the date the amendment to § 547(c)(3) became effective.

**4.** It should not be inferred that a state statute may prevent a bankruptcy court from recognizing rights and interests of debtors where nonrecognition of rights would conflict with the provisions of the Bankruptcy Code. In *In re Easy Living,* 407 F.2d 142 (6th Cir.1969), the court held that innocent purchasers, who were defrauded by a bankrupt, were entitled to be issued certificates of title, despite the provisions of OHIO REV.CODE § 4505.04. But in the proceeding at bar, there is no indication that equitable grounds exist to override Ohio's statute regarding the effect of a certificate of title on ownership nor is a conflict with the provisions of the Bankruptcy Code evident.

a "contemporaneous exchange" existed as provided by the exception of 11 U.S.C. § 547(c)(1). In that case the debtors already owned their motor vehicle and possessed a certificate of title when they obtained a loan and granted a security interest to the creditor. Thus, the security interest *attached* on the day the loan was made and *perfection* of the lien (by notation on the certificate of title) 33 days later clearly exceeded the gap of 10 days between attachment and perfection permitted by the enabling loan exception.

*In re Meritt*, 7 B.R. 876 (Bankr.W.D.Mo. 1980), did not involve a certificate of title law. It appears that after the creditor's security interest attached to the debtor's equipment, a period of nine months elapsed before a financing statement was filed. The court concluded that no contemporaneous exchange existed.

In *In re Pingel*, 17 B.R. 236 (Bankr.S.D. Oh.1982), the debtors obtained title to their motor vehicle, which caused the creditor's security interest to attach, and a year later perfection of the lien was made when the lien was noted on debtors' certificate of title. Again, there was no fulfillment of the enabling loan exception and the court found no contemporaneous exchange.

Nor is the case of *Ledford v. First National Bank of Dayton (In re Brown)*, 46 B.R. 615 (Bankr.S.D.Oh.1985), applicable to the instant matter. There a previously secured loan of the debtor was "rewritten" and a new lien of the creditor simply replaced its previous lien on the certificate of title. The court explicitly found that neither the "enabling loan" exception nor the "contemporaneous exchange" exception was decisive. Instead, there was no preference because one of the basic elements of a preferential transfer was lacking: the substitute lien did not permit the creditor to receive more than it would have received if the transfer had not been made as required by 11 U.S.C. § 547(b)(5)(B).[5]

The focus of the court in *In re Davis*, 734 F.2d 604 (11th Cir.1984), was whether the "contemporaneous exchange" exception protects a lien securing an enabling loan from avoidance as a preference, where the lien was perfected beyond the ten day grace period allowed by 11 U.S.C. § 547(c)(3). Little discussed was the fact that the transaction did not fall within the "enabling loan" exception. The collateral in *Davis* was farm equipment. The creditor delayed for a period of 20 days between the granting of the security interest and the filing of a financing statement. Implicit in the court's decision is that the security interest attached on the day of purchase. There is no conflict between *Davis* and this court's present decision. In *Davis* there was no certificate of title law involved which might have delayed the debtor in acquiring rights in the collateral.

The decision of *In re Mandrell*, 39 B.R. 455 (Bankr.M.D.Tn.1984), lends support to the Trustee's position. Although the debtors resided in a state with a certificate of title law, the court found that the debtors obtained rights in the collateral prior to the issuance of the certificate of title. Because the court did not embellish this conclusion nor discuss the concept of attachment, this court is unable to analyze *Mandrell* in terms of the rationale applied to the instant case.

It is important to note that the force of this decision may be of limited duration. As discussed in footnote 3, subsequent to October 8, 1984, the 10 day grace period of 11 U.S.C. § 547(c)(3) begins running on the date the debtor receives possession of the collateral, and not on the date the security interest attaches.

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for summary judgment be DENIED.

---

5. The case also involved an attempt to secure a previously *unsecured* loan with the new lien.

This portion of the lien was avoided because of the lack of a "contemporaneous exchange."