In the Matter of John T. EINODER and Janice Einoder, Debtors.

John T. EINODER and Janice Einoder, Plaintiffs.

v.

MOUNT GREENWOOD BANK, Defendant.

Adv. No. 84 A 506.

Bankruptcy No. 84 B 2069.

United States Bankruptcy Court,

N.D. Illinois, E.D.

Nov. 27, 1985.

**320**

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill., for plaintiffs.

Fred Drucker, Susan Berkowitz, Schwartz & Freeman, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

*Facts*

The debtors have filed a motion for summary judgment to avoid a preferential transfer and judgment lien in favor of the defendant, Mount Greenwood Bank ("the Bank"). The Bank has filed a cross motion for summary judgment. There is no issue of material fact and this case is ripe for decision as a matter of law. *See* Fed.R. Civ.P. 56; Bankruptcy Rule 7056.

The debtors own their home as owners of the beneficial interest in a land trust.[1] Chicago Title and Trust Company (hereinafter "the land trustee") is the land trustee under the land trust. On or about December 30, 1981, the Bank loaned the debtors $35,-000.00. The debtors in turn executed a promissory note which among other things gave the Bank a security interest in the beneficial interest in the land trust.[2] Sub-

---

1. Land trusts are particularly popular in Illinois. In the typical land trust arrangement the true owner of the realty is the beneficiary of the trust, owning only a beneficial interest in the trust res. Legal title to the realty is vested in the land trustee, which is typically a large financial institution or title company. The owner pays the land trustee a relatively small fee for its services. The arrangement gives the true owner of the realty several benefits. Because the beneficial ownership in the land trust is personalty, the owner's interest in the realty is converted to personal property. This makes transfers of ownership or an interest in ownership such as a security interest much simpler. In addition it has benefits in the probate and estate context. Also the identity of the owner of the beneficial interest appears in no public document. The land trustee is the record owner. Thus, the identity of the true owner of the realty is hidden from public view. The benefits to slumlords and others who would like to keep their ownership interests private are obvious.

2. The debtors deny that the original promissory note granted a security interest in the land trust. The debtors also claim that they never intended to assign the beneficial interest to the Bank as security or to lodge it with the land trustee. Assigning the beneficial interest to the creditor and lodging that assignment with the land trustee are the typical methods for creating and perfecting a security interest in the beneficial interest in a land trust. Although the beneficial interest is personal property, the perfection of security interests in beneficial interests in land trusts is not subject to the recording requirements of Article 9 under the Illinois version of the U.C.C. Instead, lodging with the land trustee is the means for perfecting the security interest. Kenoe on Land Trusts, ¶ 3.12 (1985 supp.). The Bank, however, submitted a copy of the promissory note that contains such a promise and is signed by the debtors. For the purposes of these summary judgment motions, the Court assumes that the Bank can prove that such an assignment took place. However, it is

sequently, the debtors defaulted on the loan. Thereafter, using a cognovit clause in the note, the Bank obtained a judgment by confession against the debtors for the amount of the loan plus interest and costs. The confessed judgment was later confirmed by the Bank and totalled $39,914.99.[3]

On November 16, 1983, the Clerk of the Circuit Court of Cook County issued a citation to discover assets on Chicago Title and Trust Company as land trustee for the debtors' land trust. Chicago Title and Trust Company was served with the citation on November 22, 1983. On February 17, 1984, the debtors filed a petition under Chapter 13 of the Bankruptcy Code.

*Issues*

1. Whether a Chapter 13 debtor has standing to enforce the trustee's avoiding powers.

2. Whether the Bank's citation lien arose within 90 days preceding the debtors' petition.

3. Whether the Bank's lien may be avoided in whole or in part by the debtors under 11 U.S.C. § 522(f)(1) or is otherwise subject to the debtors' exemption rights.

4. Whether the Bank has an equitable lien which is valid against a Chapter 13 trustee and/or debtor.

*Discussion*

1. *Standing*

For purposes of this opinion, the Court assumes that the Bank's citation gave it a lien by means of legal proceedings[4] in the debtors' beneficial interest in the land trust.[5] The debtors' best line of attack to avoid that lien is to try to use the power given to the bankruptcy trustee to avoid preferential transfers under § 547 of the Bankruptcy Code. In their pleadings, however, the debtors do not seek to avoid the transfer directly under § 547. Instead, the debtors seek to recover the preference using § 522(h). That section permits a *debtor* to avoid various types of transfers of the debtor's property, including preferences under § 547, to the extent of the debtor's exemption rights. Section 522 of the Bankruptcy Code gives a debtor broad powers to avoid prepetition rights of secured creditors and other transferees in property claimed by the debtor as exempt.

The debtors have asserted a joint homestead exemption of $15,000.00[6] Therefore,

---

conceded that the Bank never lodged the assignment with the land trustee. Thus the Bank never perfected its security interest in the beneficial interest in the land trust. The only lien the Bank can assert at this time is a judicial lien from its citation, explained *infra.* As to the Bank's assertion of an equitable lien, see part 4, *infra.*

**3.** No procedural or constitutional attack has been made on the validity of the confessed judgment. Because the confession process is not per se invalid, we assume the judgment is valid for purposes of this opinion. *See D.H. Overmyer Co., Inc. of Ohio v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *First Nat. Bank in DeKalb v. Keisman,* 47 Ill.2d 364, 265 N.E.2d 662 (1970). We do not have before us the question of whether Illinois law permits a confession clause to be used in this type of transaction. *See* Ill.Stat. ch. 110, § 2–1301 (Smith-Hurd 1985). We do not have sufficient facts available to determine if this was a con-

sumer transaction or if the transaction in question fits within the statutory language.

**4.** I.e. a "judicial lien" under 11 U.S.C. § 101(30).

**5.** As explained in part 2, *infra,* under Illinois law, pursuit of a citation proceeding gives the judgment creditor a lien in at least the debtor's intangible personalty. *In re La Piana,* 31 B.R. 738, 742 (Bankr.N.D.Ill.1983).

**6.** The homestead exemption is claimed under Ill.Ann.Stat. ch. 110, § 12–901 (Smith-Hurd 1985). Because Illinois has opted out. of the federal exemptions provided in § 522(d), the debtors must find their exemption rights under Illinois law. 11 U.S.C. § 522(b); Ill.Ann.Stat. ch. 110, § 12–1201 (Smith-Hurd 1985). However, the Illinois homestead law includes both real and personal property used as a residence.

even if the debtors prove that the creation of the Bank's citation lien is a preference, they would be able to avoid the lien only to the extent that the lien impairs their exemption rights, i.e. only to the amount of $15,000.00. The remaining $24,914.99 of the Bank's lien would survive. On the other hand, if the debtors could step directly into the trustee's shoes under § 547 they could avoid the entire lien, not just the extent of the debtors' exemption as under § 522(h). Therefore, the debtors potentially could avoid the entire citation lien of $39,914.99 under § 547.

■ Although the debtors assert their cause of action lies under § 522(h), the Court should construe their complaint also to assert the trustee's full avoiding powers under the more favorable § 547 to do substantial justice. *See* Fed.R.Civ.P. 8(f); Bankruptcy Rule 7008.[7] Such an approach requires the Court to determine first whether the debtors have standing to pursue a cause of action under § 547. Only a handful of courts have considered the question of whether a Chapter 13 debtor may pursue the trustee's avoiding powers outside of § 522. The virtually unanimous opinion is that the Chapter 13 debtor possesses such avoiding rights and may proceed directly against the entire transfer under § 547, *In re Ciavarella*, 28 B.R. 823, 828 (Bankr.S.D.N.Y.1983), § 544, *In re Boyette*, 33 B.R. 10, 11 (Bankr.N.D.Tex.

1983); *Matter of Hall*, 26 B.R. 10, 11 (Bankr.M.D.Fla.1982); *but see In re Carter*, 2 B.R. 321, 323 (Bankr.D.Colo.1980), and § 548, *In re Carr*, 34 B.R. 653, 655 (Bankr.D.Conn.1983).

I agree with those courts that have extended the trustee's full avoiding powers to Chapter 13 debtors. The Bankruptcy Code in § 103(a) provides with few exceptions that the provisions of Chapters 1, 3 and 5 apply in cases filed under Chapters 7, 11 or 13. Clearly the Chapter 13 trustee has standing to pursue a preference action. *See Ledford v. Society Bank*, 51 B.R. 482 (Bankr.S.D.Ohio 1985). In addition, the Chapter 13 debtor is not specifically barred from proceeding directly under § 547. More importantly, the Court should not be blind to the realities of bankruptcy practice. It is clear that the Chapter 13 debtor is the most appropriate party to seek such a recovery. While the trustee, as representative of the estate, usually is the only party to have standing to pursue the avoiding powers granted under the Bankruptcy Code, see 11 U.S.C. §§ 323, 544–553, it is also clear that in Chapter 13 cases the trustee rarely, if ever, pursues such actions because the trustee reaps little benefit for the amount of time and effort involved. The trustee would have to hire an attorney and litigate the action. Should the trustee succeed, any recovery becomes *property of the estate and goes to the debtor*.[8]

Thus, it applies to beneficial interests in land trusts. *Capitol Bank & Trust of Chicago v. Fascetta*, 771 F.2d 1077, 1078, 1080 (7th Cir.1985); *Home Federal Savings & Loan Assn. v. Zarkin*, 89 Ill.2d 232, 238, 59 Ill.Dec. 897, 901, 432 N.E.2d 841, 845 (1982); *Old Orchard Bank & Trust Co. v. Levin*, 124 Ill.App.3d 443, 445, 79 Ill.Dec. 819, 821, 464 N.E.2d 723, 725 (1st Dist. 1984); *see also People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 488, 27 Ill.Dec. 476, 479, 389 N.E.2d 540, 543 (1979).

7. Although the debtors claim to be seeking to avoid the lien only under § 522(h), they also state in their complaint that the entire lien should be set aside as a preference. As stated earlier, the only way the debtors can set aside the entire lien as a preference is under § 547 directly. Thus, the complaint can be construed to assert a claim directly under § 547.

8. 11 U.S.C. §§ 541, 1306. The facts of this case provide a particularly good example of why the debtor, not the trustee, should pursue such litigation in Chapter 13. If the trustee succeeded in avoiding the lien, the debtors' interest in the beneficial interest would increase by $15,000.00 due to their homestead exemption. Who would get the remaining $24,914.99 of freed up equity? No answer other than the debtors is defensible. If the trustee has the power to help the debtors, they ought to be able to use that power to help themselves. The fact that a successful recovery will help promote a successful Chapter 13 plan and thus increase the trustee's fees under § 151302 is of little moment. The potential increase in fees would not justify the time, expense, or risks which the trustee would face in pursuing the preference action.

In addition, the logic of the required economic distribution to creditors in a Chapter 13 plan also strongly suggests that the Chapter 13 debtor should have access to the trustee's avoiding powers. In order to get a plan confirmed, a Chapter 13 debtor must propose a distribution to unsecured creditors that satisfies the "best interests" test, i.e. that offers unsecured creditors payments with a present value at least equal to the distribution they would receive in a hypothetical Chapter 7 case involving the debtor. 11 U.S.C. § 1325(a)(4). In estimating what these debtors' creditors could expect in a Chapter 7 case, the Court would have to assume that the Chapter 7 trustee would seek to avoid the Bank's lien as preferential and would increase the distribution to creditors by virtue of the increase in non-exempt equity less costs of litigation and sale. Assuming for the sake of analysis of the standing of the Chapter 13 debtors to maintain this action that the hypothetical trustee would succeed in this regard, the amount the debtors must pay their unsecured creditors in this Chapter 13 case is increased accordingly. Therefore, it is logical to assume that because they must offer creditors payments based on the assumption that the full preference would be avoided in Chapter 7, they must similarly be able to avoid the preference in Chapter 13. Any other conclusion would be obviously unfair to the debtors.[9]

To say the trustee is the representative of the Chapter 13 estate is to raise legal formalism over reality.[10] The essential role of a Chapter 13 trustee is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans.[11] The Chapter 13 trustee is not in a position to litigate actions under the avoiding powers. As previously pointed out, the Chapter 13 trustee has no economic interest in pursuing such litigation. It is hard to conclude from any reasonable reading of § 151302(b) that Congress intended the Chapter 13 trustee to pursue such actions. At present there are pending in this division of this district some 18,000 Chapter 13 cases to be handled by two Chapter 13 trustees and their staffs. The Chapter 13 trustees would become seriously overburdened and inefficient if they chose to set aside preferences, fraudulent conveyances, and the like on a routine basis. Therefore, it is only reasonable that the bankruptcy court allow the debtor to exercise the avoiding powers for his or her own benefit and for the creditors' indirect benefit as the trustees are unlikely ever to pursue those matters on their own. The trustees' inactivity in this regard should not result in windfalls to those creditors who have received avoidable transfers from Chapter 13 debtors.

This is true despite the fact that Chapter 13 contains no equivalent provision to § 1107, which explicitly gives the Chapter 11 debtor-in-possession the powers of the trustee. The absence of a Chapter 13 equivalent to § 1107 makes sense. The debtor in Chapter 13 is not the same as a Chapter 11 debtor-in-possession. There is always a trustee in a Chapter 13 case[12] as contrasted with the normal Chapter 11 case where there is no trustee.[13] Thus, a Chapter 13 debtor, although remaining in possession of his or her assets[14] does not have *all* of the powers of a trustee. The Chapter 13 trustee, for example, retains the exclusive power to investigate the debtor's financial affairs,[15] presumably to be able to comment intelligently on the debtor's proposed plan. The most logical analysis is that the Chapter 13 trustee has *some* of the

---

**9.** It is important to note that the debtors cannot have the Bank's claim disallowed in toto. Instead, it is clear that to the extent the lien is avoided, the Bank gets an allowable unsecured claim. 11 U.S.C. § 502(h), Bankr.R. 3002(c)(3). That claim will have to be dealt with in the plan to be discharged. Thus, the Bank will likely receive some distribution for its claim.

**10.** *Cf.* 11 U.S.C. § 323.

**11.** 11 U.S.C. § 151302.

**12.** 11 U.S.C. § 151302.

**13.** 11 U.S.C. § 151104.

**14.** 11 U.S.C. § 1306.

**15.** 11 U.S.C. § 151302(b)(1).

trustee's powers, i.e. those necessary to carry out the trustee's assigned functions under § 151302, while the remaining trustee's powers vest in the Chapter 13 debtor. The Chapter 13 trustee has no need to pursue any avoiding powers to carry out any duties assigned to the Chapter 13 trustee by the Code. Of course, I do not reach the question of whether the Chapter 13 trustee *could* exercise the avoiding powers should he or she choose to do so. Although I have little doubt that the Chapter 13 trustee could exercise the avoiding powers, I do not now have that question before me. In this case there is no evidence that the trustee will seek to exercise the avoiding powers.[16] Thus the debtors have standing under § 547.[17]

### 2. *The Merits—The Citation Lien as a Preference*

■ Section 547(b) permits the trustee to avoid (1) a transfer of the debtor's property (2) to or for the benefit of a creditor (3) on account of antecedent debt (4) made while the debtor was insolvent (5) on or within 90 days before the filing of the petition[18] (6) where such transfer allows the creditor to receive a greater percentage of the debtor's estate than it would have received had the transfer not taken place and had the debtor's assets been liquidated and distributed in a Chapter 7 case. The only element in dispute in the case at bar is whether the citation proceeding caused a transfer of the debtors' property within 90 days before the filing of their Chapter 13 petition.

Under Illinois law, a citation to discover assets is a supplementary proceeding designed to aid a judgment creditor in discovering the debtor's property and applying such property to satisfy the judgment. *Matter of Stoner Investments, Inc.*, 7 B.R. 240, 241 (Bankr.N.D.Ill.1980), *aff'd.* 80 C 6226 (D.Ct.N.D.Ill., Aug. 6, 1981). Only recently has Illinois case law clearly expressed the view that the initiation of a citation proceeding creates a judicial lien in at least intangible personal property such as a debtor's beneficial interest in a land trust. *See Asher v. United States*, 570 F.2d 682, 684 (7th Cir.1978); *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill.1984); *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D.Ill.1983); *Stoner Investments*, 7 B.R. at 241; *In re Marriage of Rochford*, 91 Ill.

---

**16.** Similarly, I find no need for the debtor to demand that the trustee pursue the action or move for permission to be allowed to proceed in the trustee's right as a prerequisite to proceeding under § 547 in the debtor's own name. In light of the fact that the real party in interest is the debtor, and the fact that the trustee has no economic interest in any potential recovery, such a demand or motion would be an idle ceremony.

**17.** Even if I were to conclude that the debtors lacked standing to proceed directly under § 547, I would find that they could avoid the preference to the extent that it impairs their exemption rights under § 522(h). At one point there was a split of authority whether a Chapter 13 debtor could assert the avoiding powers of § 522. The trend in the recent case law clearly favors allowing the debtor to proceed under § 522(f). *See, e.g., In re Hall*, 752 F.2d 582, 590 (11th Cir.1985); *In re Willis*, 48 B.R. 295, 303 (S.D.Tex.1985); *In re Allred*, 45 B.R. 676, 677 (Bankr.E.D.N.C.1985) (reversing *In re Aycock*, 15 B.R. 728 (Bankr.E.D.N.C.1981); *In re Quidley*, 39 B.R. 362, 365 (Bankr.E.D.Va.1984); *In re Fisk*, 36 B.R. 924, 926 (Bankr.W.D.Mich.1984); *In re Wheeler*, 34 B.R. 818, 820–21, 22 (Bankr.N.D.Ala.1983); *In re Evans*, 30 B.R. 744, 745–46 (Bankr.N.D.Ohio 1983); *In re Saberman*, 3 B.R.

316, 320–21 (Bankr.N.D.Ill.1980); *but see In re Berry*, 30 B.R. 36, 38–39 (Bankr.E.D.Mich.1983); *In re Morgan*, 18 B.R. 17, 17–18 (Bankr.D.Del. 1981). This Court has no doubt that § 522 applies in its entirety in Chapter 13 cases and that the Chapter 13 debtor has the full panoply of rights available thereunder. 11 U.S.C. § 103(a). This accords with the legislative intent both to encourage individual debtors to use Chapter 13 rather than Chapter 7 and to afford a debtor a reasonable chance for a fresh start in Chapter 13. A more generous exemption policy in Chapter 7 as compared with Chapter 13 would frustrate the congressional policy of encouraging consumer debtors to use Chapter 13 in preference to Chapter 7. In addition the reasons for extending the trustee's direct avoiding powers to Chapter 13 debtors apply to the Chapter 13 debtors' exercise of § 522(h) rights as well.

**18.** The 90 day period is extended to one year in certain circumstances where the creditor receiving the transfer is an insider. *See* 11 U.S.C. § 547(b)(4)(B). *See also* 11 U.S.C. § 101(28). There is no allegation that the Bank was an insider.

App.3d 769, 774, 46 Ill.Dec. 943, 948, 414 N.E.2d 1096, 1101 (1st Dist.1980); *see also* Note, "Enforcement of Creditors' Rights", 1975 U.Ill.L.F. 424, 429–34; Breitsameter, "A Comparison of Supplementary Proceedings and Creditor's Bills", 70 Ill.B.J. 694, 695 (July 1982).

It is clear that the fixing of a judicial lien is a "transfer" for Bankruptcy Code and preference purposes. *See* 11 U.S.C. § 101(40);[19] *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill.1984); *In re Burnham*, 12 B.R. 286, 297 (Bankr.N.D.Ga.1981). What this Court must now determine is the exact time at which the Bank's judicial lien attached to the debtors' property, i.e. when the transfer took place. The debtors argue that the lien attached when Chicago Title and Trust Company was served with the citation on November 22, 1983, 87 days before the filing of the bankruptcy petition. The Bank claims that the lien attached when the clerk issued the citation on November 16, 1983, 93 days before the debtors filed their petition. The question of when the lien arose is resolved by reference to state law. *In re Vero Cooling & Heating, Inc.*, 11 B.R. 359, 360 (Bankr.S.D. Fla.1981).

Illinois Revised Statutes ch. 110, § 2–1402 governs citations. That section provides that "[a] supplementary proceeding shall be commenced by the *service* of a citation issued by the clerk." [20] (emphasis added) The plain language of this statute favors the debtors' view as to the time the citation lien arises. The statute requires both issuance and service of the citation to commence the supplementary proceeding. As stated earlier, the initiation of the citation proceeding fixes the judicial lien. *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D. Ill.1983). If the legislature intended the interpretation that the Bank argues, it would have stated that the supplementary proceeding shall be commenced by the "issuance of a citation by the clerk," not by the "service of a citation issued by the clerk." Nothing in the purpose behind the citation provision or in the case law suggests anything other than that the plain language of the statute should control. Therefore, the Court holds that the Bank's lien arose on the date Chicago Title and Trust Company received the citation.[21] That was on November 22, 1983. This analysis leads to the conclusion that a transfer of an interest in the debtors' property occurred within 90 days of the filing of their petition. Thus, because all of the other elements of a preference are present, the debtors may avoid the citation lien under § 547.[22]

### 3. *Homestead Exemption*

Even if the Bank's interpretation of the Illinois citation provision is correct and the Bank's lien arose outside of the 90 day period, so that a preference action does not

19. The petition was filed in this case on February 17, 1984. Thus, the Bankruptcy Code as it existed before the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") governs. Pub.L. 98–353, § 553(a). Pre-BAFJA § 101(40) defined a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or with an interest in property, including retention of title as a security interest."

20. Illinois Supreme Court Rule 277, which applies to supplementary proceedings, contains language virtually identical to § 2–1402: "(b) How Commenced: The supplementary proceeding shall be commenced *by the service* of a citation on the party against whom it is brought." (emphasis added)

21. The Bank relies on *In re Foluke*, 38 B.R. 298 (Bankr.N.D.Ill.1984) for the proposition that the

date of the issuance of the citation is determinative. Judge Hertz in *Foluke* was not faced with the question of whether a transfer occurred upon the issuance or service of the citation. Judge Hertz only had to consider whether the citation lien arose at the commencement of the supplementary proceedings in general or at the time of the property turnover from the citation respondent to the judgment creditor. *Foluke*, therefore, is of little value in resolving the issue in this case.

22. Alternatively, the debtors may avoid the lien to the extent of their homestead exemption under § 522(h). However, because the relief afforded the debtors by § 547 is broader than that afforded them by § 522(h), logic suggests that they will proceed under the former section as opposed to the latter.

lie, the debtors can nevertheless avoid the Bank's lien under § 522(f)(1), at least to the extent it impairs their joint homestead exemption. The debtors have valued their residence at $160,000.00.[23] There is a first mortgage on the property in the principal amount of $112,000.00 plus $4,955.00 in arrearages. Thus, without regard to costs of sale, the equity above the first mortgage and its arrearages is approximately $43,-000.00. In their schedule of exempt property, the debtors each claimed the statutory limit of $7,500.00 under the homestead exemption. Ill.Ann.Stat. ch. 110, § 12–901 (Smith-Hurd 1985).[24]

Section 522(f)(1) permits a debtor to avoid a judicial lien in the debtor's property to the extent that the lien impairs one of the debtor's exemptions.[25] Under § 101(30) (formerly § 101(27)), the Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." A citation lien is included within that broad definition. *In re Johnson*, 24 B.R. 751, 753 (Bankr.N.D.Ill. 1982).[26]

The debtors must also prove that the citation lien impairs an exemption to which they are entitled. Illinois law allows a $15,000.00 homestead exemption to joint debtors. As stated earlier, the equity remaining in the debtors' homestead after the first mortgage and arrearages is $43,-000.00. The Bank possesses a judicial lien on the debtors' property in the amount of $39,914.99. If the Court allowed the Bank to recover the entire amount of its judgment, the debtors could claim only about $3,000.00 of their homestead exemption. The Bank's lien, therefore, impairs the debtors' exemption by approximately $12,-000.00. Consequently, the debtors would be able to avoid the Bank's lien to the extent to which it impairs their exemption. The Bank's lien, if valid, would remain enforceable to the extent that it does not impair the debtors' exemption rights.

While the result under § 522(f)(1) would be identical in dollar terms from the debtors' point of view to the result they would achieve under § 522(h), the key difference from the debtors' vantage point lies in what they do and do not have to prove under § 522(f)(1). For the debtors to succeed under § 522(h) (and § 547), they must show that the Bank's lien arose within 90 days preceding their Chapter 13 petition. No similar showing is required under § 522(f)(1). Under § 522(f)(1) the date the lien arose is irrelevant.[27] A debtor can avoid a judicial lien impairing an available exemption under § 522(f)(1) regardless of how old that lien might be at the time of the petition.[28]

### 4. *Equitable Lien*

■ The Bank's strongest position lies in its assertion of an equitable lien in the assignment of the debtors' beneficial interest in the land trust. If the equitable lien theory is valid, the Bank would not have to

---

**23.** The Court will accept this valuation for purposes of the summary judgment motions as it is not disputed by the Bank.

**24.** This is the same $15,000.00 that the debtors seek to recover as a preference under § 522(h).

**25.** Section 522(f)(1) states:
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien ...

**26.** A confession of judgment such as occurred in this case also can give rise to a judicial lien for bankruptcy purposes. *In re Ashe,* 669 F.2d 105, 108–9 (3d Cir.1982).

**27.** The date the judicial lien arose is irrelevant at least so long as the lien arose after October 1, 1979. *Compare United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982).

**28.** However, the debtors are not forced to choose between remedies. Thus, if the analysis earlier in this opinion of the alleged preferential transfer resulting from the citation lien and the debtors' standing to challenge it is correct, the debtors can avoid the judicial lien in its entirety under § 547 and the § 522(f)(1) remedy need not be pursued.

worry about either § 522 or § 547. Presumably, the equitable lien was created well outside of the 90 day period which would obviate the Bank's preference problems.[29] In addition, if a valid unavoidable equitable lien exists in favor of the Bank, it would be good as against the debtors' exemption claim. 11 U.S.C. § 522(c)(2). The basis of the Bank's equitable lien claim is its assertion that the assignment was lost or misplaced before it could be lodged with the land trustee.[30] Thereafter, the Bank filed a complaint in the Circuit Court of Cook County to confirm an equitable lien and for a preliminary injunction. That action was stayed once the debtors filed their bankruptcy petition. *See* 11 U.S.C. § 362.

Numerous state courts, including those in Illinois, have recognized the existence of equitable liens. *See Hargrove v. Gerill Corp.*, 124 Ill.App.3d 924, 931, 80 Ill.Dec. 243, 248, 464 N.E.2d 1226, 1231 (2d Dist. 1984); *Marshall Savings & Loan Assn. v. Chicago Nat. Bank*, 56 Ill.App.2d 372, 378, 206 N.E.2d 117, 120 (2d Dist.1965); *First Nat. Bank v. Hill*, 406 F.Supp. 351, 352–53 (N.D.Ga.1975); *Northern Commercial Co. v. E.J. Hermann Co., Inc.*, 22 Wash.App. 963, 967, 593 P.2d 1332, 1335–36 (1979). Equitable liens arise in two general situations: (1) a written contract reflects the parties' intent to satisfy a debt from particular property or (2) a court grants equitable relief in light of the parties' relationship and dealings in the particular case. *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692, 703 (7th Cir.1973), *cert. denied Canadian Parkhill Pipe Stringing Ltd. v. United States*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490, *appeal after remand*, 540 F.2d 258, *cert. denied* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752; *Jones v. Carpenter*, 90 Fla. 407, 410, 106 So. 127, 129 (1925); *Hargrove*, 124 Ill.

App.3d at 930–31, 80 Ill.Dec. at 248, 464 N.E.2d at 1231. In the latter instance, the doctrine is most frequently applied where a creditor is subjected to fraud, *In re Merts Equipment Co.*, 438 F.Supp. 295, 298 (M.D. Ga.1977) or is prevented from perfecting its interest by an uncooperative debtor. *Matter of Rettig*, 32 B.R. 523, 524–25 (Bankr.D.Del.1983); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 119 (Bankr.S.D. N.Y.1982).

The Bank presents a good argument for the application of an equitable lien in this case. The Bank attempted to perfect its lien by lodging the assignment with the land trustee; however, the Bank claims that the assignment was lost or misplaced and that the debtors refused to reexecute the agreement. This fact scenario, if proved, could very well prompt an Illinois state court to find an equitable lien. Were state law alone controlling, the Bank might well succeed. Unfortunately for the Bank, this is not the Illinois state court. It is the Bankruptcy Court, and this is not an *Erie* context where state law controls. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). Instead, this is a claim asserted in the bankruptcy context. Therefore, the issue becomes, assuming the Bank's claim of equitable lien to be valid under Illinois law, how does that Illinois equitable lien fare under the Bankruptcy Code on the facts of this case. For the answer to that question we must turn to the Bankruptcy Code and the policies underlying that law. Once the Court looks to the Bankruptcy Code and its purposes, the result becomes clear.

Even if this Court did rule that the Bank had an equitable lien, the lien nevertheless would be subject to avoidance by the debtors. An equitable lien simply cannot sur-

---

**29.** Although an equitable lien is not judicially recognized until judgment is rendered declaring its existence, it relates back to the time it was created by the conduct of the parties. *Marbach v. Gnadl*, 73 Ill.App.2d 303, 315, 219 N.E.2d 572, 579 (1st Dist.1966).

**30.** The Bank also alleges that the debtors have "willfully refused" to reexecute the assignment.

If such were relevant, it would raise an issue of fact justifying denial of the motions for summary judgment. Under my analysis, the reason for the failure to execute the proper documents is irrelevant because I hold, in effect, equitable liens are no good against Chapter 13 debtors under all but the most unusual circumstances.

vive in the context of this case. The Court reaches this conclusion for several reasons.

First, as pointed out earlier, the debtors' beneficial interest in the land trust is personal property. Under Article 9 of the U.C.C. an unperfected security interest in personalty, such as the equitable lien asserted in this case, is subordinate to the interest of a person who becomes a lien creditor before the security interest is perfected. U.C.C. § 9–301(1)(b); Ill.Ann.Stat. ch. 26, § 9–301(1)(b) (Smith-Hurd 1985). A lien creditor includes a trustee in bankruptcy from the date of the filing of the petition. U.C.C. § 9–301(3); Ill.Ann.Stat. ch. 26, § 9–301(3) (Smith-Hurd 1985). Thus, the bankruptcy trustee, by virtue of his or her status as a hypothetical lien creditor under § 544(a), can always defeat such an unperfected lien interest in personalty. *In re Finkle*, 38 B.R. 101, 103 (Bankr.D.Mary. 1984); *In re Henzler Mfg. Corp.*, 36 B.R. 303, 306 (Bankr.N.D.Ohio 1984); *O.P.M. Leasing Services*, 23 B.R. at 120. These Chapter 13 debtors, as explained earlier, may exercise the trustee's avoiding powers and therefore may defeat the equitable lien by asserting the avoiding power directly under § 544(a).

Second, equitable liens have long been the object of scorn in bankruptcy. Under the old Bankruptcy Act § 60(a)(6) (11 U.S.C. § 96(a)(6)), equitable liens were "declared to be contrary to the policy" of bankruptcy law. A creditor who had failed to take all the steps required to perfect a lien should not be allowed to fall back on an assertion of an equitable lien to frustrate the Bankruptcy Code policy of recognizing only perfected interests in property.[31] Although this statement was not included in the Bankruptcy Reform Act of 1978, it maintained its approval through the Gilmore Committee Report on the Bankruptcy Code.[32] That report stated that § 60(a)(6) was no longer necessary because Article 9 of the Uniform Commercial Code had "turned the 'equitable liens' against which § 60(a)(6) was directed into 'unperfected security interests' which the trustee can in any case set aside."[33] *See also In re Washington Communications Group, Inc.*, 10 B.R. 676, 679 (Bankr.D.D. C.1981). Only if an equitable lien would be sufficient under applicable state law to survive an attack under § 544(a), and if the facts of the case made the equitable lien invulnerable to attack as preferential under § 547, would an equitable lien be good in bankruptcy. Because I believe that under Illinois law an equitable lien would be ineffective against a subsequent creditor obtaining a lien by legal proceedings, I hold that Illinois equitable liens fall under § 544(a).[34]

While in general the Bankruptcy Code does give recognition to liens which are valid under state law, this is not always the case. *See, e.g.,* §§ 522(f)(2), 545, 547. There has long been a great hostility in bankruptcy to secret liens such as equitable liens.[35] While there are some cases where equitable liens have been recognized

---

**31.** 11 U.S.C. § 544(a). The exception to the general rule that interests be perfected at the time the petition is filed or fail is found in § 546(b), allowing certain interests to be perfected post-petition and to be good against a bankruptcy trustee. Section 546(b) obviously is unavailable to the Bank in this case. Had the debtors sold their beneficial interest in the land trust to a *bona fide purchaser* without notice instead of filing a Chapter 13 petition, the Bank's unperfected security interest and equitable lien would have been wiped out. *See* 53 C.J.S. Liens §§ 4, 13, at 839, 859 (1985 supp.); *Dudley v. Eberly*, 201 F.Supp. 728, 731 (D.Or. 1962); *United States v. Pagano*, 188 F.Supp. 774, 780 (E.D.N.Y.1960); *O.J. Thomason Builders' Supplies, Inc. v. Goodwin*, 152 So.2d 797, 800 (D.Fla.1963).

**32.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 209, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787.

**33.** *See* U.C.C. § 9–301(3) (1984); *see also* Ill. Ann.Stat. ch. 26, § 9–301(3) (Smith-Hurd 1985).

**34.** Whether this alleged equitable lien could survive an attack under § 547 raises a very different question. It is a matter I need not reach. *But see* n. 29, *supra.*

**35.** *See generally* Collier on Bankruptcy, § 60.50 (14th ed. 1977); *see also* McLaughlin, "Aspects of the Chandler Bill to Amend the Bankruptcy Act", 4 U.Chi.L.Rev. 369, 395 (1937).

in the bankruptcy context, for the most part these have been in situations involving fraud. *See In re Jones,* 37 B.R. 969 (Bankr.N.D.Tex.1984); *In re Albritton,* 17 B.R. 555 (Bankr.M.D.Fla.1982); *In re Garland Corp.,* 6 B.R. 452 (Bankr.D.Ma.1980). There is no suggestion that these debtors have been guilty of fraud. The worst they can be charged with is failure to cooperate. What we really have here is a Bank which lost the documents giving it a security interest and, thus, due to its own fault, failed to take the steps required to perfect its security interest. The policy spelled out in § 544(a) and U.C.C. § 9–301 with respect to those who can perfect their security interests and through neglect or otherwise fail to do so could not be clearer.

While at first glance the beneficiaries of this result might appear to be the debtors, giving rise to an image of inequity, it must be remembered that this policy also benefits the debtors' unsecured creditors. They are protected against having previously unknown and unknowable liens suddenly dropped on the debtors' assets in the bankruptcy context. Such secret liens could well exhaust most or all of a debtor's estate. Moreover, such liens, if allowed in bankruptcy, could leave unsecured creditors with no dividends in a Chapter 7 case and thus no right to a significant distribution in a Chapter 13 case. By denying recognition to the equitable lien, the debtors' unsecured creditors (other, of course, than the Bank) are benefitted even in a Chapter 13 case, as the amounts which the debtors must offer them to get their plan confirmed are increased. 11 U.S.C. § 1325(a)(4). Accordingly, the result reached in this opinion promotes one of the principal goals of the Bankruptcy Code—fair and equal treatment of creditors. *Cf. In re UNR Industries,* 46, B.R. 671, 675 (Bankr.N.D.Ill.1985).

*Conclusion*

Based on the foregoing, and because no genuine issue of material fact exists as a matter of law, the Court grants the debtors' motion for summary judgment and denies the Bank's cross motion for same.